Argued December 15, 1975, reversed and remanded February 9,
reconsideration denied March 17, petition for review denied May 18, 1976

# STATE OF OREGON, *Appellant,*

## *v.*

# GLENN PAUL PHELPS, *Respondent.*

## (No. 16-202, CA 4966)

545 P2d 901

*W. Michael Gillette,* Solicitor General, Salem, argued the cause for appellant. With him on the brief were Lee Johnson, Attorney General, and James A. Hill, Jr., Assistant Attorney General, Salem.

*Kenneth W. Saxon,* Portland, argued the cause for respondent. With him on the brief was William F. Thomas, Portland.

Before Schwab, Chief Judge, and Thornton and Lee, Judges.

SCHWAB, C. J.

**SCHWAB, C. J.**

A grand jury indicted defendant for one count of perjury, ORS 162.065, and three counts of tampering with a witness, ORS 162.285, in connection with his prior defense of a charge of driving under the influence of intoxicating liquor. Defendant's original attorney in the DUIL case had been subpoenaed by the grand jury. Relying on a preliminary opinion by the Oregon State Bar Committee on Professional Responsibility,[1] he had testified as to communications between defendant and him concerning the contemplated perjury. Defendant moved the court for an omnibus hearing under ORS 135.037 to determine the admissibility of the attorney's testimony. For the purposes of the hearing, the parties agreed to the following historical facts:

When defendant was charged with DUIL, he advised his attorney that he could produce several witnesses who would testify that he was not driving at the time of the alleged offense. After investigation, the attorney felt that defendant had not told him the truth. When the attorney confronted defendant and a witness with this possibility, they admitted that defendant had lied to the attorney with regard to who was driving the car. Upon receiving assurances that perjured testimony would not be used in the case, the attorney withdrew. Defendant then retained another lawyer and successfully defended the case by using perjured testimony.

Following the omnibus hearing, the circuit court ordered "that [the attorney] may not be compelled to testify as to any of the privileged communications between himself and the defendant as it relates to the subject case unless the defendant waives the privilege." The state appeals from the order pursuant

---

[1] After defendant was indicted, the committee issued a formal opinion which concluded that the attorney-client communications concerning the contemplated perjury may not be disclosed. Oregon State Bar Committee on Professional Responsibility, Opinion No. 289 (1975).

to ORS 138.060(3).[2] *State v. Koennecke,* 274 Or 169, 545 P2d 127 (1976); *State v. Hoare,* 20 Or App 439, 532 P2d 240 (1975).

The question is whether the evidence which the circuit court suppressed before trial is protected by the attorney-client privilege or whether it falls within the future crime exception to the rule of privilege.

Disciplinary Rule DR 4-101(B), part of the Code of Professional Responsibility for attorneys in Oregon, states:

> "Except when permitted under DR 4-101(C), a lawyer shall not knowingly:
>
> "(1) Reveal a confidence or secret of his client.
>
> "\* \* \* \* \*."

This ethical obligation is codified in ORS 9.460(5) which provides:

> "An attorney shall:
>
> "\* \* \* \* \*
>
> "(5) Maintain inviolate the confidence, and at every peril to himself, preserve the secrets of his clients."

There are certain exceptions to this standard which are based on public policy considerations. For instance, Disciplinary Rule DR 4-101(C) states:

> "A lawyer may reveal:
>
> "\* \* \* \* \*
>
> "(3) The intention of his client to commit a crime and the information necessary to prevent this crime.
>
> "\* \* \* \* \*."

As in this case, a conflict can arise between these competing duties imposed on attorneys.

■ If a client consults an attorney about prior wrong-doing, there is no doubt that the privilege protects

---

[2]ORS 138.060(3) provides:

> "The state may take an appeal from the circuit court to the Court of Appeals from:
>
> "\* \* \* \* \*
>
> "(3) An order made prior to trial suppressing evidence \* \* \*."

their confidential communications. *E.g., Alexander v. United States,* 138 US 353, 357-58, 11 S Ct 350, 34 L Ed 954 (1891); *Atlanta Coca-Cola Bottling Co. v. Goss,* 50 Ga App 637, 179 SE 420, 421 (1935); *Williams v. Williams,* 108 SW2d 297, 299 (Tex Civ App 1937); *State ex rel. Sowers v. Olwell,* 64 Wash2d 828, 394 P2d 681, 684 (1964). Defendant contends that this case falls within the privilege since the communication related to a past crime, i.e., the DUIL offense.

Defendant's position is illogical. The testimony which the state seeks to introduce into evidence concerns the crime of perjury for which defendant was indicted in this case. At the time of the attorney-client discussion, the crime of perjury had not been committed.

■ The privilege is not meant to protect discussion of future crime or fraud designed to conceal past wrongdoing. *Burger v. Crocker,* 392 SW2d 640 (Mo App 1965), is a good example. That case was an action by the payee against the maker, one Crocker, for collection of notes. Plaintiff had promised to pay Crocker's attorney fees and other expenses which Crocker or his wife might incur while Crocker was in prison for committing perjury. Plaintiff had suborned Crocker's perjury to conceal plaintiff's practice of collecting cash overages on automobile sales while price controls were in effect. Crocker signed promissory notes which were to be used, in the event of government investigation, as evidence that plaintiff was not paying Crocker to "take the rap."

At the trial to recover on the notes, defendant introduced the deposition of plaintiff's attorney, Mr. Dyer. The attorney, concerned about the possibility of a conspiracy indictment being returned against plaintiff and Crocker, had asked the plaintiff how he was handling the payments to Crocker. According to the attorney's testimony, plaintiff replied: "Oh, I have some notes and other papers to show to the government or the agents, if they inquire about it." The Court

of Appeals held that this exchange was not privileged. The court stated that a person cannot

" '* * * employ an attorney for the purpose of aiding and abetting him in the commission of a future crime or fraud, and thereby seal the lips of his lawyer to secrecy and thus prevent the exposure or detection of such crime or fraud. The privileged communication may be a shield of defense as to crimes already committed, but it cannot be used as a sword or weapon of offense to enable persons to carry out contemplated crimes against society. The law does not make a law office a nest of vipers in which to hatch out frauds and perjuries.' * * * It is to be noted that subsequent to the conversation between the plaintiff and his attorney, Mr. Dyer withdrew completely from representation of any of the parties in any of the facets of this case. In view of the fact that, considered within the fabric of this case, the plaintiff's statement constituted a brazen declaration of an intent to commit a crime in the future, Mr. Dyer's action was understandable. The statement objected to was not a privileged communication * * *." 392 SW2d at 645.

*Accord, Clark v. State,* 159 Tex Crim 187, 261 SW2d 339, 346-47, *cert denied* 346 US 855 (1953).

Defendant also suggests that the future crime or fraud exception to the attorney-client privilege does not apply where the crime could not be prevented by disclosure because it had already been committed at the time of trial even if it had not been committed when the attorney-client communications occurred. An examination of reasons other than crime prevention which justify the future crime exception reveals the weakness of defendant's argument. As stated in a leading English case:

"* * * In order that the rule [of privilege] may apply there must be both professional confidence and professional employment, but if the client has a criminal object in view in his communications with his solicitor one of these elements must necessarily be absent. The client must either conspire with his solicitor or deceive him. If his criminal object is avowed, the client does not consult his advisor professionally, because it cannot be the solicitor's business to further any criminal object. If the

client does not avow his object, he reposes no confidence, for the state of facts, which is the foundation of the supposed confidence, does not exist. The solicitor's advice is obtained by a fraud. * * *" *Queen v. Cox,* (1884) 14 QBD 153, 168.

McCormick also explains why the future crime or fraud exception is well established:

> "Since the policy of the privilege is that of promoting the administration of justice, it would be a perversion of the privilege to extend it to the client who seeks advice to aid him in carrying out an illegal or fraudulent scheme. Advice given for those purposes would not be a professional service but participation in a conspiracy. Accordingly, it is settled under modern authority that the privilege does not extend to communications between attorney and client where the client's purpose is the furtherance of a future intended crime or fraud. * * *" McCormick, Evidence 199, § 95 (2d ed Cleary 1972) (cases collected).

We have found only one Oregon case on this subject, but it is in accord with the nearly universal rule that communications made for an illegal purpose are not protected. In *Young's Estate,* 59 Or 348, 116 P 95, 116 P 1060, 1913B Ann Cas 1310 (1911), an alleged will offered for probate by the proponent was attacked as a forgery. On the issue of the genuineness of the alleged will, testimony was offered concerning a letter from a client to her attorney in which she wrote, "I will have a will for probate that will surprise you." At trial, this testimony was excluded as a privileged communication. In reversing, the Supreme Court stated:

> "* * * [W]e think it was admissible, as the relation of attorney and client had terminated at the time the letter was written, and *it also contained an indirect threat to commit forgery and such a communication is never privileged.*" 59 Or at 353-54. (Emphasis supplied.)

We find no reason why the exception to the attorney-client privilege should be applied differently if a client commits a contemplated crime before his attorney discloses his intention to do so.

[ 335 ]

■ What quantum of proof is necessary before the trial court should compel disclosure of the attorney-client communications is not considered by us at this time[3] since the trial court's order was based on its memorandum opinion finding that the communications in question are privileged. We hold that they are not.[4]

Reversed and remanded.

---

[3] For a discussion of this issue, see McCormick, Evidence 199, 200, § 95 (2d ed Cleary 1972); Gardner, *The Crime or Fraud Exception to the Attorney-Client Privilege,* 47 ABAJ 708, 710-11 (1961); and Annotation, 125 ALR 508, 519 (1940).

[4] To be workable, the future crime or fraud exception must apply only when the attorney-client communication concerns a *knowingly* unlawful end. Uniform Rules of Evidence, rule 502(d)(1) (1974), applies the furtherance of crime or fraud exception only when legal services were sought to aid the commission of an act the client knew or reasonably should have known to be a crime or fraud. Dean Wigmore also believes the exception should be applied in this fashion. VIII Wigmore, Evidence 572, 573 and 577, § 2298 (McNaughton rev 1961).