Argued March 10, peremptory writ to issue June 6, 1978

# STATE ex rel NORTH PACIFIC LUMBER COMPANY, *Plaintiff-Relator,*

*v.*

# UNIS, *Defendant.*

## (SC 25434)

579 P2d 1291

Robert Allen, of Morrison, Dunn, Cohen, Miller & Carney, Portland, argued the cause for plaintiff-relator. On the brief was Jeffrey R. Spere and Morrison, Dunn, Cohen, Miller & Carney, Portland.

Michael A. Corn, Portland, argued the cause for defendant. With him on the brief was Henry A. Carey, Portland.

Before Denecke, Chief Justice, and Holman, Howell, Bryson, Lent and Linde, Justices.

DENECKE, C. J.

## DENECKE, C. J.

This original proceeding in mandamus arises out of discovery proceedings in connection with a pending action against North Pacific Lumber Company and others. It requires us to examine certain aspects of the attorney-client testimonial privilege which we have not, in the past, had occasion to consider.

The underlying action was brought by Mr. Oliver, a former employee of North Pacific Lumber Co., against that company and other defendants, seeking general and punitive damages for invasion of privacy. The complaint alleges that North Pacific personnel listened in on Oliver's telephone conversations, without his knowledge or consent, while he was employed by the company. In preparation for trial, Oliver's counsel took the deposition of Mr. David, who was president and general manager of North Pacific. Mr. David, in his deposition, admitted that he had instructed the company's chief telephone operator to listen in on calls made by some employees and that North Pacific had had special telephone monitoring equipment installed at its offices. He volunteered the information that before doing so the corporation had obtained legal advice.

Oliver thereupon filed a notice of deposition of North Pacific's attorneys and served them with subpoenas duces tecum requiring them to bring, when attending for deposition, any documents reflecting legal opinions by the firm relating to

"* * * the propriety of the officials and employees of North Pacific Lumber Co. engaging in eavesdropping activites either through instructions to telephone operators or by the use of specially wired telephones with secret monitoring capabilities."

North Pacific then moved for a protective order precluding Oliver or his counsel from inquiring into confidential communications by North Pacific to its attorneys and the attorneys' professional advice. The defendant in this proceeding, a judge of the circuit

[ 459 ]

court, heard the motion and denied it in an order which limited the scope of the permissible inquiry "to the subject of telephone monitoring." We allowed North Pacific's alternative writ of mandamus, ordering defendant to enter the requested protective order or to show cause for not doing so.

> The answer to the alternative writ alleges that "* * * the attorney-client privileges claimed on behalf of plaintiff-relator was forfeited because such communcations were made by plaintiff-relator for the purpose of furtherance of the commission by plaintiff-relator of a future intended crime as prohibited by ORS 165.540 and a future intended tort of the invasion of the right of privacy as defined by the common laws of the State of Oregon."

The answer labels this conclusion a finding of fact.

The first question before us is whether, as a matter of law, the attorney-client privilege is unavailable as to communications made in furtherance of an intended crime or tort. The attorney-client privilege is codified as follows in ORS 44.040(1):

> "There are particular relations in which it is the policy of the law to encourage confidence, and to preserve it inviolate; therefore a person cannot be examined as a witness in the following cases:
>
> "* * * * *.
>
> "(b) An attorney shall not, without the consent of his client, be examined as to any communication made by the client to him, or his advice given thereon, in the course of professional employment."

On its face, the statute provides absolute protection to all communications to and advice given by an attorney in the course of professional employment, permitting testimonial disclosure only with the client's consent.[1] We have not, however, applied the privilege so literally. For example, although the statute is not limited by its terms to communications which the client intended

---

[1] Subsection (2) provides that a party to a proceeding who offers himself as a witness is deemed to consent to an examination of his attorney on the same subject.

at the time to be confidential, we have held that the policy underlying the privilege does not require its application where the circumstances indicate that the client did not intend the particular information or communication to be confidential.[2] And where the client is deceased and the litigation concerns the disposition of the decedent's property, we have held, relying on the presumed intent of the decedent, that the privilege is not applicable.[3]

We have never had occasion to pass on the exception to the privilege which is asserted here, although it was mentioned in dictum in *Young's Estate,* 59 Or 348, 116 P 95, 116 P 1060 (1911). In that case a communication to an attorney was held admissible on the dual grounds that the attorney-client relationship had terminated by the time the communication was made and that in any event the client had consented to the examination of the attorney by offering herself as a witness on the same subject. The opinion, describing the communication, says:

"* * * it also contained an indirect threat to commit forgery and such a communication is never privileged." 59 Or at 354.

That statement, which was not necessary to the decision, was not supported by any analysis or citation of authority. So far as the decisions of this court are concerned, the existence of an exception to the attorney-client privilege for communications involving intended future wrongdoing is an open question.

The Court of Appeals was squarely faced with the question in *State v. Phelps,* 24 Or App 329, 545 P2d 901, S Ct *rev. denied* (1976). It found such an exception to be generally recognized and applied it to hold that an attorney could be required to testify in a criminal proceeding, over his former client's objection, to the

---

[2] *Stark Street Properties v. Teufel,* 277 Or 649, 562 P2d 531 (1977); *Baum v. Denn,* 187 Or 401, 211 P2d 478 (1949).

[3] *Tanner v. Farmer,* 243 Or 431, 414 P2d 340 (1966); *Bergsvik v. Bergsvik,* 205 Or 670, 291 P2d 724 (1955).

[ 461 ]

client's communications indicating an intention to procure or commit perjury.

In *State ex rel Hardy v. Gleason,* 19 Or 159, 23 P 817 (1890), this court held that an attorney, in a proceeding supplementary to execution on a judgment against his client, could be required to disclose what property of his client he had had in his possession and what he had done with it. Discussing the statutory statement of the attorney-client privilege, the court said that it was declaratory of the common law. 19 Or at 162.

In 1862 when the Oregon privilege statute was enacted there was a recognized exception to the common-law privilege covering attorney-client communications when the communication was made in furtherance of an intended crime. 8 Wigmore, Evidence, at 574-577 (McNaughton Rev 1961). The extent of the exception and the circumstances in which it applied, however, were not clearly established at that time. Subsequently, more jurisdictions recognized that such an exception existed in the common law.[4] We have not found any jurisdiction which has refused to recognize this exception in any form. A number of courts have considered it immaterial that the statutory statement of the privilege did not mention the exception, treating the statutes as declarations of the privilege as it existed at common law.[5]

■ Consistent with the recognition in *State ex rel Hardy v. Gleason, supra* (19 Or 159), that our statute is merely declaratory of the common law attorney-client privilege, and with our practice of construing the statute in light of the underlying policies which it is intended to serve, we hold, as an exception to the attorney-client privilege, that an attorney may, under

[4] *See, generally,* Anno, Attorney-Client Privilege as Affected by Wrongful or Criminal Character of Contemplated Acts or Course of Conduct, 125 ALR 508 (1940), and supplements.

[5] *See, e.g., United States Automobile Association v. Werley,* 526 P2d 28 (Alaska 1974); *Ridener v. Commonwealth,* 256 Ky 112, 75 SW2d 737 (1934); *Gebhart v. United Rys. Co. of St. Louis,* 220 SW 677 (Mo 1920); *Nadler v. Warner Co.,* 321 Pa 139, 184 A 3 (1936).

appropriate circumstances, be required to testify about a client's communications which relate to future wrongdoing. It remains to consider what may be appropriate circumstances under which to compel such disclosure.

The drafters of the Uniform Rules of Evidence, as part of a detailed statement of the attorney-client testimonial privilege, originally included the following description of the exception:

> "Such privileges shall not extend (a) to a communication if the judge finds that sufficient evidence, aside from the communication, had been introduced to warrant a finding that the legal service was sought or obtained in order to enable or aid the client to commit or plan to commit a crime or a tort, * * *." Uniform Rules of Evidence Rule 26, 9A Uniform Laws Anno 613 (1965).

This formulation, insofar as it would extend the exception to all intended torts, was not clearly supported by existing case law.[6] When the Uniform Rules were revised in 1974, the statement of the exception was changed significantly:

> "There is no privilege under this rule:
>
> "(1) *Furtherance of crime or fraud.* If the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew or reasonably should have known to be a crime or fraud: * * *." Uniform Rules of Evidence Rule 502(d), 13 Uniform Laws Anno 220 (Master Ed)

For reasons which will appear, it is not necessary for us to decide, in this case, whether the exception to the privilege applies in cases involving intended torts which do not involve criminal conduct.

We must address, however, the question of what kind of showing is otherwise necessary in order to invoke the exception to the privilege. The original Uniform Rule 26, quoted above, would require sufficient evidence, apart from the communication itself, to

---

[6] *See* the cases collected in Anno, Applicability of Attorney-client Privilege to Communications with Respect to Contemplated Tortious Acts, 2 ALR3d 861 (1965).

permit a finding that the attorney was consulted "in order to enable or aid the client to commit or plan to commit a crime * * *." Implicit in this statement is the requirement that the client know (or at least have reasonable grounds to know) of the criminal nature of the intended course of action. This requirement is express in Rule 502 of the 1974 revision, also quoted above. Although courts have not always been precise in their discussions of this problem, other authorities agree that some such showing must be made. *See, e.g.,* Wigmore, supra at 573, 577 (the advice must be sought for a knowingly unlawful end); Gardner, *The Crime or Fraud Exception to the Attorney-Client Privilege,* 47 ABA J 708, 710 (1961) ("There must be at least some evidence from which a permissible inference might reasonably be drawn as to the client's harboring a wrongful purpose in seeking the consultation."). *See also* Comment, *The Future Crime or Tort Exception to Communications Privileges,* 77 Harv L Rev 730, 738 (1964), suggesting that an *in camera* hearing be held after "extrinsic evidence and information gleaned from questions concerning the general purpose and nature of the parties' consultation provide some support for an allegation of unlawful purpose * * *."

■ We approve of the requirement that, in order to invoke the exception to the privilege, the proponent of the evidence must show that the client, when consulting the attorney, knew or should have known that the intended conduct was unlawful. Good-faith consultations with attorneys by clients who are uncertain about the legal implications of a proposed course of action are entitled to the protection of the privilege, even if that action should later be held improper.

Although defendant in this case made no formal finding on the issue of knowledge, he stated, at the conclusion of the hearing on the motion, that the alleged telephone eavesdropping
"* * * speaks for itself of the unlawfulness of the act. The type of act is such that if it existed, it obviously was

such that the parties knew it was illegal, illegal in the sense against the criminal laws of the state; and also, if not that, which I am satisfied there was enough evidence to show from the finding, that they knew it was unlawful and violate of very important rights of certain citizens."

It thus appears that he based his ruling on the conclusion that the eavesdropping, if it took place, was so clearly criminal or tortious that anyone who engaged in it must be held to know that it was wrongful.

■ ORS 165.540, cited in defendant's order, provides:

"(1) Except as otherwise provided in ORS 133.725 [providing for court orders] or subsections (2) to (5) of this section, no person shall:

"(a) Obtain or attempt to obtain the whole or any part of a telecommunication * * * to which such person is not a participant, by means of any device, contrivance, machine, or apparatus, whether electrical, mechanical, manual, or otherwise, unless consent is given by at least one participant."

None of the statutory exceptions in subsections (2) to (5) expressly permit business telephone subscribers to listen in on conversations by employees or anyone else. A violation of the statute is a criminal offense; the statute provides for a penalty of up to three years' imprisonment. ORS 165.540(6)(a). We will therefore assume for purposes of this decision, although we do not hold, that the eavesdropping of which North Pacific has been accused by Oliver, is a crime under the statute. That assumption, however, does not decide this case. The defendant judge was apparently of the opinion that the alleged eavesdropping of North Pacific "obviously was such that the parties knew it was illegal, * * *," and evidence of knowledge was not necessary. We disagree. While the subject of electronic eavesdropping, and of legislation to regulate it, has been a matter of general public interest in recent years, we know of no general public awareness which would justify holding that an employer must know

that it is a crime to listen in on telephone conversations by employees made during working hours on the employer's telephones.[7]

As to defendant's conclusion that the alleged eavesdropping would constitute a common law tort, we hold that even if that is the case, North Pacific personnel could not be held as a matter of law to knowledge of that fact. Although we have clearly recognized the tort of invasion of privacy,[8] we have never considered in that context the problem of telephone eavesdropping, or whether employees using their employers' telephone system have a justifiable expectation of privacy. The cases from other jurisdictions are neither so numerous nor so clear in their holdings that we could hold that the public at large (or employers as a class) must be held to understand that this particular kind of eavesdropping is an invasion of a protected right.[9]

■ Defendant also contends that there was evidence to justify a holding that North Pacific personnel, in fact, knew or should have known that the alleged eavesdropping was unlawful. That evidence is a contract with the telephone company, executed when the special telephone equipment was installed. That contract provides in part:

"* * * * *

[7]Federal wiretap law excludes from prohibited interceptions of telephone conversations the use of equipment "* * * furnished to the subscriber or user by a communications common carrier in the ordinary course of its business and being used by the subscriber or user in the ordinary course of its business; * * *." 18 USCA 2510(4), (5)(a)(i). The only interpretation of this section in a business employment context which we have found is *United States v. Christman,* 375 F Supp 1354 (ND Calif 1974). The court held a security officer of the employer had not violated the act.

[8]*See McLain v. Boise Cascade Corp.,* 271 Or 549, 554, 533 P2d 343 (1975), and cases cited.

[9]We have found no cases involving electronic eavesdropping by employees except those decided under statutes. *See, e.g., United States v. Christman, supra* n. 7; *Huff v. Michigan Bell Telephone Company,* 278 F Supp 76 (ED Mich 1967); *State v. Giardina,* 27 NJ 313, 142 A2d 609 (1958). Very few cases have considered invasion of privacy by listening in on telephone extensions. *See Le Crone v. Ohio Bell Tel. Co.,* 120 Ohio App 129, 201 NE2d 533 (1963); *Commonwealth v. Murray,* 423 Pa 37, 223 A2d 102, 109-10 (1966).

"2. The service is provided solely for the purpose of determining the need for training or improving the quality of service rendered by employees in the handling of telephone calls to the customer of an impersonal business nature.

"3. Under no circumstances may this observing equipment be used for any other purpose, nor in any manner contrary to tariff or law.

"* * * * *.

"5. The customer shall inform all of its employees that their business telephone contacts are subject to observation."

Clearly, the use of the special equipment for covert eavesdropping on employees' personal calls would be a violation of the contract with the telephone company. However, the contract does not directly state that such a use would be contrary to law. While forbidding uses "in any manner contrary to tariff or law," it does not disclose what such uses are. While this contract, obviously phrased for the protection of the telephone company rather than for the instruction of the subscriber, is certainly sufficient to raise a question in the mind of a reasonable person as to the lawfulness of the kind of eavesdropping alleged here, it does not answer that question. It suggests the need for consultation with an attorney on that matter; it does not permit a finding that a party to the contract who consults an attorney about proposed eavesdropping must have done so in bad faith or in an attempt to obtain legal assistance for a purpose known to be illegal.

Respondent contends that because the writ of mandamus may not be used to control judicial discretion, ORS 34.110, we must defer to his determination of disputed questions of fact. In *State ex rel Ware v. Hieber,* 267 Or 124, 515 P2d 721 (1973), we held that in an original proceeding in mandamus, where the evidence before the lower court was conflicting, the function of this court is to decide whether there was any evidence to substantiate the circuit court's ruling. 267 Or at 127.

There was no conflicting relevant evidence in this case. There was no evidence that North Pacific personnel actually knew at the time they consulted their attorneys that the telephone eavesdropping they had in mind was illegal. Under the law as we have determined it, the issue before the court was not whether a reasonable person in North Pacific's circumstances would have sought legal advice, but whether such a person must be held to have realized, prior to obtaining legal advice, that the intended conduct was illegal. We hold, as a matter of law, that the record in this case will not support such a holding.

Therefore, a peremptory writ will issue directing defendant to enter an appropriate protective order.