Argued July 18, affirmed October 2, reconsideration denied November 7, petition for review denied December 12, 1978, 284 Or 521

STATE OF OREGON, *Respondent,*

*v.*

BELVA MARIE RAY, *Appellant.*

(No. 77 4951, CA 10294)

STATE OF OREGON, *Respondent,*

*v.*

BELVA MARIE RAY, *Appellant.*

(No. 77 4951, CA 10294)

(Consolidated cases)

584 P2d 362

J. Marvin Kuhn, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Douglass Harcleroad, Deputy District Attorney, Eugene, argued the cause for respondent. With him on the brief was J. Pat Horton, District Attorney, Eugene.

Before Schwab, Chief Judge, and Lee, Richardson and Joseph, Judges.

SCHWAB, C. J.

## SCHWAB, C. J.

Defendant and Ralph Edwin Ray (Ray) were convicted of forgery in the first degree (ORS 165.013) and perjury (ORS 162.065). Her principal contention is that the trial court erred in ordering her former attorney to testify regarding communications which defendant argues were privileged and which the court concluded came within the "future crimes" exception to the attorney-client privilege.

Defendant, whose name was then Sharon Potter, met Ray in early 1976. At that time, Ray had been living for approximately 20 years with Belva Marie Amerson (Amerson). Although Ray and Amerson were not husband and wife, Amerson had "adopted" his surname and thereafter signed checks and other documents under various formulations of her name and his, including "Belva Marie Ray." Amerson and Ray jointly owned certain real property, and Amerson's interest in that property was under the name "B. Marie Ray." The relationship between Amerson and Ray terminated in April, 1976, and in October of that year she filed a suit to partition the jointly owned property. She brought the suit in the name "Marie B. Amerson." On May 10, 1977, a decree was entered giving Ray title to the property, awarding Amerson $14,500, and directing her to convey her interest in the property to Ray upon his payment of the judgment.

In February, 1977, defendant consulted an attorney for the purpose of instituting statutory proceedings to change her name from Sharon K. Potter to Belva Marie Ray. The attorney did so. The attorney had also been engaged by Ray as his attorney in the partition proceeding. On March 10, 1977, defendant and Ray came to the attorney's office. They had with them a number of documents which evidenced certain joint interests in Ray's name and in the name "Belva Marie Ray" (or variations of that name). The attorney became concerned that defendant intended to sign that name to documents which would affect interests of

Amerson, and advised the defendant generally that she should not use the name for that purpose. There were subsequent communications between the attorney, Ray and defendant, in which the attorney repeated his advice. On March 11, 1977, Ray dismissed the attorney, and immediately thereafter the attorney formally withdrew. Defendant's change of name to Belva Marie Ray became final in April, 1977.

On May 19, 1977, defendant executed a satisfaction of the judgment awarded Amerson in the partition suit, by signing the name "Marie B. Amerson" to the satisfaction. The forgery charges against defendant and Ray are based on that allegation. At the same time, defendant also allegedly signed the name "B. Marie Ray" to a bargain and sale deed conveying to Ray the property he had formerly owned jointly with Amerson, and which the decree in the partition suit had directed Amerson to deed to Ray after receiving from him the amount awarded her in that suit.

In July, 1977, Amerson instituted a civil proceeding to set aside the satisfaction of the judgment. In that proceeding, both defendant and Ray testified that Amerson rather than defendant had signed the satisfaction, and that Amerson had been paid the amount of the judgment by Ray in defendant's presence. The perjury charges against defendant and Ray arise from that testimony.

At the defendants' trials on the criminal charges, the attorney was directed to testify, over objection by the defendants and over his own assertion of the attorney-client privilege, regarding his March 10, 1977, conversation and subsequent communications with defendant and Ray. The state contends that the attorney's testimony was properly admitted because it came within the "future crimes" exception to the attorney-client privilege. Prior to admitting the attorney's testimony, the trial judge conducted a pretrial omnibus hearing. At that hearing, the state stated it would prove the facts described above. The court heard

the attorney's testimony and ruled that it came within the future crimes exception to the privilege as interpreted by this court in *State v. Phelps,* 24 Or App 329, 545 P2d 901, *rev den* (1976). The attorney's testimony was properly admitted.

In *State ex rel N. Pacific Lbr. v. Unis,* 282 Or 457, 579 P2d 1291 (1978), the Supreme Court quoted from the provision of the Uniform Rules of Evidence pertaining to the future crimes exception:

" 'There is no privilege under this rule:

" '(1) *Furtherance of crime or fraud.* If the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew or reasonably should have known to be a crime or fraud: * * *.' Uniform Rules of Evidence Rule 502(d), 13 Uniform Laws Anno 220 (Master Ed)." 282 Or at 463.[1]

The Supreme Court then stated:

"We approve of the requirement that, in order to invoke the exception to the privilege, the proponent of the evidence must show that the client, when consulting the attorney, knew or should have known that the intended conduct was unlawful * * *." 282 Or at 464.

*See also State v. Phelps, supra,* 24 Or App at 336, n 4. The Supreme Court further indicated in *Unis* that whether the client "knew or reasonably should have known that the intended conduct was unlawful" is essentially a question of fact to be determined by the trial judge, stating:

"We must address, however, the question of what kind of showing is otherwise necessary in order to invoke the exception to the privilege. The original Uniform Rule 26, quoted above, would require sufficient evidence, apart from the communication itself, to permit a finding that the attorney was consulted 'in order to enable or aid the client to commit or plan to commit a crime * * *.' Implicit in this statement is the requirement that the client know (or at least have reasonable grounds to

---

[1]The Supreme Court expressly declined to reach the question of "whether the exception to the privilege applies in cases involving intended torts which do not involve criminal conduct." It is also unnecessary for us to consider that question in this case.

know) of the criminal nature of the intended course of action. This requirement is expressed in Rule 502 of the 1974 revision, also quoted above. Although courts have not always been precise in their discussions of this problem, other authorities agree that some such showing must be made. *See, e.g.,* Wigmore, supra at 573, 577 (the advice must be sought for a knowingly unlawful end); Gardner, *The Crime or Fraud Exception to the Attorney-Client Privilege,* 47 ABA J 708, 710 (1961) ('There must be at least some evidence from which a permissible inference might reasonably be drawn as to the client's harboring a wrongful purpose in seeking the consultation.'). *See also* Comment, *The Future Crime or Tort Exception to Communications Privileges,* 77 Harv L Rev 730, 738 (1964), suggesting that an *in camera* hearing be held after 'extrinsic evidence and information gleaned from questions concerning the general purpose and nature of the parties' consultation provide some support for an allegation of unlawful purpose * * *.' " 282 Or at 463-64.

■ Here, the trial court followed the procedures endorsed in *Unis* in making its determination that the future crimes exception was applicable to defendant's conversations with the attorney. The evidence supports the trial court's ruling. The defendant and Ray consulted the attorney for the purpose of changing her name to duplicate the name used by Amerson in connection with the latter's property interests. Those interests were the subject of a pending partition suit between Amerson and Ray at the time of the consultation with the attorney. There was evidence that the defendant subsequently signed a variation of her new name to a deed conveying Amerson's property interests to Ray, as well as signing Amerson's name to a satisfaction of the judgment for Amerson in the partition suit. The trial judge correctly found from that evidence "some support for an allegation of unlawful purpose" in the defendant's consultation with the attorney to change her name to the name Amerson had used. There was a strongly supportable inference that the objective of the name change was to further a general scheme by defendant and Ray to

intentionally "injure or defraud" Amerson, culminating in their alleged commission of an offense, forgery, of which the "intent to injure or defraud" is an element. ORS 165.007. The attorney's testimony was properly admitted under the future crimes exception.

■ Defendant's second assignment of error is that the trial court erred in refusing to allow her motion to exclude all evidence of her name change from the jury. Her theory is that the name change was irrelevant to the charges, because the name she was accused of forging was "Marie B. Amerson" rather than "Belva Marie Ray," and the risk of prejudice outweighed the probative value of the evidence. We disagree. The evidence of the name change was relevant to proof of a criminal scheme to "defraud" Amerson.

■ Defendant's final assignment of error is that the trial court erred in denying her motion for a directed verdict on the perjury charge. She contends that there was no evidence other than Amerson's testimony to support a verdict that certain of the allegedly perjured statements were false, and that corroborating evidence was required. *State v. Shoemaker,* 277 Or 55, 559 P2d 498 (1977). While her analysis of *Shoemaker* may be correct, her analysis of the record is not. It is replete with corroborating evidence.

Affirmed.