George CALDWELL and Hattie L. Caldwell, Petitioners,

v.

The DISTRICT COURT In and For the CITY AND COUNTY OF DENVER, State of Colorado, The Honorable Henry E. Santo, one of the Judges thereof, Respondents.

No. 82SA7.

Supreme Court of Colorado.

April 19, 1982.

Roger T. Castle, Denver, for petitioners.

Madden & Strate, P. C., Trevor J. Mac-Lennan, Wheatridge, Hall & Evans, Raymond J. Connell, Denver, for respondents.

LOHR, Justice.

In this original proceeding pursuant to C.A.R. 21, we directed the Denver District Court to show cause why the petitioners' motion to compel discovery of certain documents possessed by Bruno Weinschel, The Hertz Corporation (Hertz), and their attorney, Ronald Hill, should not be granted. We conclude that the trial court erred in summarily denying the requested discovery and so make the rule absolute.

## I.

The petitioners, George and Hattie Caldwell, brought this action in Denver District Court, contending that the defendants, Hertz, Hill, and Weinschel, fraudulently concealed information and misrepresented facts in an earlier personal injury action brought by the Caldwells, with the result that summary judgment for Weinschel was improperly granted and Hertz, as Weinschel's insuror, was unjustly insulated from payment of damages for the Caldwells' injuries. The petitioners' efforts to obtain discovery of information bearing on their claim of fraud have resulted in the issues now before us. A rather detailed exposition of the facts is necessary to an understanding of the questions that we must resolve.[1]

The present action stems from an automobile accident on December 5, 1974, in which a car carrying the Caldwells was struck by a second automobile owned by Hertz. The Hertz car had been rented by Bruno Weinschel, and was being operated by Werner Baumgart at the time of the accident. Weinschel was not in the car with Baumgart when the mishap occurred.

Baumgart and Weinschel had travelled together from the East Coast to Colorado for a skiing vacation. Weinschel had rented the Hertz car in order to provide transportation from the Denver airport to the resort community of Vail, Colorado. After arriving in Vail, it became necessary to return to Denver to pick up two women who were joining Baumgart and Weinschel for their skiing holiday. Baumgart departed alone for this purpose, picked up the women at Stapleton Airport, and was involved in the auto accident while returning to Vail on Interstate 70.

On August 14, 1975, the Caldwells brought a negligence action against Baumgart and Hertz in the Denver District Court (Action No. C–57586). Hertz retained attorney Ronald Hill to represent its interests and those of Baumgart. Shortly thereafter, the Caldwells stipulated that Hertz be dismissed as a party, without prejudice.

On January 23, 1978, with the permission of the court, the Caldwells added Bruno Weinschel as a defendant in the negligence action, claiming that Weinschel was vicariously liable for Baumgart's negligence on the theories of agency and joint enterprise. Hertz again turned to Hill, this time for representation of Weinschel. Hill filed a motion for a summary judgment dismissing Weinschel from the action. On October 17, 1978, the motion was granted.

The Caldwells proceeded with their action against Baumgart, which was set for trial on August 27, 1979. On August 22, 1979, the trial court granted Hill permission to withdraw as counsel for Baumgart due to his inability to locate Baumgart and prepare a defense. On August 30, 1979, the Caldwells obtained a judgment against Baumgart, which awarded damages of $74,989.86 to Hattie Caldwell and $20,451.78 to George Caldwell.

As judgment creditors, the Caldwells served a writ of garnishment on Hertz, contending that Hertz was liable for their damages as Baumgart's insurer. Hertz denied any obligation to pay the judgment. In the course of the garnishment action, the Caldwells' counsel was allowed limited discovery into the files of Hertz and its attorney Hill concerning the Baumgart action. Review of these documents led the Caldwells' counsel to believe that Hertz, Weinschel, and Hill had committed fraud in defending the Caldwell personal injury action.

1. The trial court record in this case is not before us. We rely upon the briefs of the parties and the available pleadings for the facts of this case.

Consequently, a new action was filed in the Denver District Court against Hertz, Hill, and Weinschel (defendants), alleging fraud and civil conspiracy (No. 80–CV–3184). In the first claim for relief, the Caldwells alleged that the defendants knowingly made false representations and withheld material information concerning the presence of a joint venture or agency relationship between Baumgart and Weinschel at the time of the car accident in December 1974. Specifically, they alleged that in the summer of 1975 Hill and Hertz were aware of a statement by Baumgart that the purpose of Baumgart's trip to Denver was to transport two women to Vail to join Weinschel and Baumgart for their skiing vacation, and that Baumgart made this trip at Weinschel's request and with his consent. The complaint also alleged that Hertz and Hill had received letters from Baumgart stating that "[the Hertz car] was driven by me with the full consent of the lessee, Mr. Bruno Weinschel, of Gaithersburg, Maryland, for whom I am acting as an export consultant." The complaint states that awareness of the business relationship between Baumgart and Weinschel is also reflected by letters sent from Hill to Weinschel in 1977.

The complaint alleges that, notwithstanding this information, Hill submitted a motion for a summary judgment dismissing Weinschel from the Caldwells' personal injury action in which Hill stated that, at the time of the accident, Baumgart was performing a personal errand that did not in-volve or concern Weinschel in any way. The complaint states that, in support of the motion for summary judgment, Hill submitted an affidavit of Weinschel averring, "I [Weinschel,] did not request that [Baumgart] go to Denver, and he did not perform any errands or other functions for me. He used the automobile strictly for his own purposes." The complaint alleges these statements constituted knowing misrepresentations made with the intent to insulate Weinschel and Hertz from liability for the accident. If successful, the result would be to leave the Caldwells with a judgment against only Baumgart, who could not be located. In the second count of the Caldwells' complaint they incorporate the allegations of their first count and further assert that the alleged acts of misrepresentation and fraud were perpetrated pursuant to an agreement between the defendants constituting a civil conspiracy.[2]

Pursuant to C.R.C.P. 34, the Caldwells filed a request for production of documents concerning the defendants' assessments of the value of Baumgart's testimony and Baumgart's potential liability to the Caldwells. The Caldwells also requested production of any correspondence between Hill and Hertz or between Hill and Weinschel during the period from December 5, 1974, to April 1, 1980.[3] The defendants resisted discovery of these documents on the basis that they were privileged. The Caldwells filed a motion under C.R.C.P. 37 to compel production of the papers. On March 20, 1981, the

---

**2.** The Caldwells' complaint also contained a third claim for relief, asserting that they were third-party beneficiaries of the contracts between Hill and Baumgart and Hertz and Baumgart concerning liability insurance and legal representation of Baumgart in the Caldwells' personal injury action. The Caldwells allege that they were damaged as a result of the breach of those contracts by Hertz and Hill. The trial court dismissed this claim for relief and that ruling is not challenged.

**3.** The motion requested:
"That the defendants produce and permit the plaintiffs to inspect and/or copy each of the following documents:
1. All correspondence, memoranda, documents, notes or any other writing or item which in any way discusses or concerns any of the defendants' opinions, ideas, or comments, or any of the defendants' agents', servants' or employees' opinions, statements or comments concerning the value of WERNER BAUMGART'S testimony, the value of WERNER BAUMGART as a witness, or the possibility of WERNER BAUMGART being found liable to the plaintiffs.
2. All notes, correspondence, memoranda or any other documents or item of communication between the defendants RONALD HILL or any member of his law firm, and the defendants HERTZ CORPORATION or BRUNO WEINSCHEL between December 5, 1974, and April 1, 1980."

trial court denied the motion, agreeing with the defendants that the requested documents were privileged.

On January 6, 1982, the Caldwells filed a petition for relief in the nature of mandamus asking us to direct the trial court to order the requested discovery. We then issued a rule to show cause why the. requested relief should not be granted. Two issues are presented by this proceeding: (1) whether this is a proper case for review under C.A.R. 21; and (2) whether the trial court erred in denying the requested discovery on the basis that the documents are privileged. We address these issues in turn.

## II.

Hertz and Weinschel contend that this is not an appropriate case for C.A.R. 21 review and that, in any case, the Caldwells should be denied relief because of laches. We disagree.

 The exercise of this court's original jurisdiction under C.A.R. 21 is discretionary and governed by the circumstances of the case. *E.g., Coquina Oil Corp. v. District Court*, Colo., 623 P.2d 40 (1981). Although orders relating to pre-trial discovery are interlocutory in nature and normally not reviewable in an original proceeding, we have not hesitated to exercise our original jurisdiction when a discovery order places a party at an unwarranted disadvantage in litigating the merits of his claim. *E.g., Hawkins v. District Court*, Colo., 638 P.2d 1372 (1982); *Sanchez v. District Court*, Colo., 624 P.2d 1314 (1981); *Seymour v. District Court*, 196 Colo. 102, 581 P.2d 302 (1978).

Our recent decision in *Hawkins v. District Court, supra*, is dispositive on this issue. In *Hawkins* the petitioner's home was destroyed by fire. He filed a loss claim with his insurance company but was refused payment. He sued the insurance company for breach of the insurance contract, bad faith refusal to pay his claim, and outrageous conduct. In the course of the ensuing litigation, he sought the production of certain insurance company documents relating to his claim. The company refused to comply and the petitioner filed a motion to compel discovery. The trial court denied the motion on the basis that the materials were privileged. We concluded that the court's denial of discovery was properly reviewable in an original proceeding, stating:

> The respondent court's denial of the petitioner's motion to compel discovery will preclude the petitioner from obtaining information vital to his claims for relief and justifies our exercise of original jurisdiction under the circumstances present here.

638 P.2d at 1375.

Similarly, denial of discovery in the present case would undercut the Caldwells' ability to prove the allegations of their complaint. We find this an appropriate case for the exercise of our original jurisdiction.

 Hertz and Weinschel also argue that the Caldwells are barred by laches. They point to the ten-month delay between the trial court's denial of the Caldwells' motion to compel discovery and their petition to this court. The doctrine of laches is applicable to original proceedings in this court and may bar our exercise of jurisdiction. *Nolan v. District Court*, 195 Colo. 6, 575 P.2d 9 (1978). However, there must be an unreasonable delay resulting in demonstrated prejudice for the doctrine to apply. *Id.* While Hertz and Weinschel assert that the ten-month delay in this case was prejudicial, they do not support that bald assertion with an explanation of the nature or extent of such prejudice. Under these facts, the doctrine is inapplicable.[4]

---

4. Hertz and Weinschel assert one other procedural bar to our review. They contend that the question of Weinschel's vicarious liability for Baumgart's negligence was decided in the Caldwells' initial personal injury action, No. C–57586, by Weinschel's dismissal from that action on a motion for summary judgment. They argue that the Caldwells cannot now bring a collateral attack relitigating this issue. The Caldwells state that Hertz and Weinschel raised this argument in their motion to dismiss in the trial court, and that it was rejected by the trial judge on the basis that the Caldwells' complaint was at least in part an independent

Having resolved the procedural challenges to the present proceeding, we turn to the merits of the petitioners' contention that the trial court erred in denying the requested discovery.

### III.

Hertz and Weinschel contend that the requested documents are protected from discovery by the attorney-client privilege, which is codified in section 13–90–107(1)(b), C.R.S.1973 (1981 Supp.). It provides:

(1) There are particular relations in which it is the policy of the law to encourage confidence and to preserve it inviolate; therefore, a person shall not be examined as a witness in the following cases:

. . . .

(b) An attorney shall not be examined without the consent of his client as to any communication made by the client to him or his advice given thereon in the course of professional employment; . . . .

Hertz and Weinschel argue that the statute does not provide for any exceptions to the privilege—that its terms are absolute and unyielding. However, such a rigid approach to the attorney-client privilege is incorrect. We have previously limited its scope where the communications between a client and his attorney are made for the purpose of aiding the commission of a future crime or a present continuing crime. *A. v. District Court*, 191 Colo. 10, 550 P.2d 315 (1976), *cert. denied*, 429 U.S. 1040, 97 S.Ct. 737, 50 L.Ed.2d 751 (1977); *Losavio v. District Court*, 188 Colo. 127, 533 P.2d 32 (1975). The reason for this exception to the privilege was explained in *A. v. District Court, supra* :

The attorney-client privilege is rooted in the principle that candid and open discussion by the client to the attorney without fear of disclosure will promote the orderly administration of justice. The criminal

purpose exception to the privilege grows out of a competing value of our society which is manifested in the rule that 'the public has the right to every man's evidence, particularly in grand jury proceedings.' Consequently, the attorney-client privilege is not absolute.

191 Colo. at 22, 550 P.2d at 324–25 (citation omitted).

 Our past recognition of the "future crimes" exception, however, does not dispose of the issue in this case. The question we now address is whether that exception should be extended to communications between attorney and client for the purpose of aiding a continuing or future civil wrong. We expressly reserved that question in *A. v. District Court, supra*, where we stated:

The cases seem to disagree on the breadth of the exception regarding noncriminal wrongdoings in the attorney-client relationship. As this case only involves certain alleged *criminal* conduct in the relationship, we need not address the issue of the scope of the exception in this opinion, and, of course, we do not decide it.

191 Colo. at 22, n.11, 550 P.2d at 324, n.11. We now hold that the exception does extend to civil fraud.

Although the exception to the attorney-client privilege created for future illegal activity was at one time limited to criminal activity, *see* Annot., 125 A.L.R. 508, 514 (1940), it is now well-settled that this exception is also applicable to advice or aid secured in the perpetration of a fraud. *See* 8 J. Wigmore, *Evidence* § 2298 (McNaughton Rev. 1961 and 1981 Supp.); *McCormick, Evidence* § 95 (2d ed. 1972 and 1978 Supp.); Gardner, *The Crime or Fraud Exception to the Attorney-Client Privilege*, 47 A.B.A.J. 708 (1961) (Gardner, *The Crime or Fraud Exception*); Uniform Rules of Evidence, Rule 502(d), 13 U.L.A. 250 (Master Ed.

equitable action directly attacking the summary judgment dismissing Weinschel from case No. C–57586. We also conclude that the present case is proper as an independent equitable action. *See Atlas Construction Co., Inc. v. District Court*, 197 Colo. 66, 589 P.2d 953

(1979); *Dudley v. Keller*, 33 Colo.App. 320, 521 P.2d 175 (1974). Consequently, it is not subject to the time limits of a C.R.C.P. 60(b) motion or the common law rules prescribing the limits of a collateral attack. *Id.*

1980); *see generally* Annot., 125 A.L.R. 508 (1940 and Supps.).

The rationale for excluding such communications from the attorney-client privilege is that the policies supporting the existence of that privilege are inapplicable where the advice and aid sought refers to future wrongdoing rather than prior misconduct. As stated by Wigmore:

> [The policy reasons supporting the attorney-client privilege] predicate the need of confidence on the part not only of injured persons, but also of those who, being already wrongdoers in part or all of their cause, are seeking legal advice suitable for their plight. The confidences of such persons may legitimately be protected, wrongdoers though they have been, because, as already noticed (§ 2291 *supra*), the element of wrong is not always found separated from an element of right; because, even when it is, a legal adviser may properly be employed to obtain the best available or lawful terms of making redress; and because the legal adviser must not habitually be placed in the position of an informer. But these reasons all cease to operate at a certain point, namely, where the desired advice refers *not to prior wrongdoing*, but to *future wrongdoing*. From that point onwards, no protection is called for by any of these considerations.

8 *J. Wigmore, Evidence, supra*, § 2298 at 573 (emphasis in original).

We follow the majority rule that an appropriate case alleging civil fraud may also require that the privilege give way.[5] The remaining question is whether this is an appropriate case for application of this exception.

In *A. v. District Court, supra*, we addressed the procedure to be followed in determining whether the criminal purpose exception was applicable. There we held that a judge may order disclosure of the allegedly privileged documents upon a *prima facie* showing that the future crimes exception is applicable. We stated that this *prima facie* showing is "not tantamount to proof of a prima facie case," but requires that there be a showing of "some foundation in fact" for the alleged illegal conduct. We also held that the trial court may conduct an *in camera* review of the allegedly privileged documents without first requiring a *prima facie* showing if it determines that this would aid its assessment of the privilege's applicability. The ultimate burden is upon the party asserting the exception to the privilege, and it must be demonstrated that the exception applies to each document before that document is stripped of its privilege. *Id.*

We believe that the procedure adopted in *A. v. District Court, supra*, is appropriate to the civil as well as the criminal context. The courts and commentators are generally agreed that the proponent of the crime or fraud exception must make a showing of the applicability of the exception before the privilege recedes. *E.g., United States v. Hodge and Zweig*, 548 F.2d 1347, 1354 (9th Cir. 1977); *Union Camp Corp. v. Lewis*, 385 F.2d 143 (4th Cir. 1967); *Duplan Corp. v. Deering Milliken, Inc.*, 397 F.Supp. 1146, 1172, 1194 (D.S.C.1974); *United Services Automobile Assn. v. Werley*, 526 P.2d 28 (Alaska 1974); *State ex rel. North Pacific Lumber Co. v. Unis*, 282 Or. 457, 579 P.2d 1291 (1978); Note, *The Future Crime or Tort Exception to Communications Privileges*, 77 Harv.L.Rev. 730 (1964) (Note, *The Future Crime or Tort Exception*); Gardner, *The Crime or Fraud Exception, supra*. We recognize that there is some apparent division in authority over whether this showing must amount to a *prima facie* case or whether some lesser quantum of proof is adequate. *See generally*, Gardner, *The Crime or Fraud Exception, supra*. How-

---

5. There is a division of authority over whether the crime or fraud exception extends to all form of tortious conduct. *See United Services Automobile Assn. v. Werley*, 526 P.2d 28, 32 (Alaska 1974); Annot., 2 A.L.R.3d 861 (1965 and 1981 Supp.); *McCormick, Evidence, supra* § 95 at 201; 8 *Wigmore, Evidence, supra* § 2298 at 573–577. Because the present case involves a claim of fraud, we need not and do not reach the question of whether this exception to the attorney-client privilege extends to other forms of tortious conduct.

ever, we believe *A. v. District Court, supra,* appropriately reconciled the need for protection of the attorney-client relationship and the competing need to avoid use of that relationship as a shield for the perpetration of wrongful conduct by concluding that a foundation in fact for the charge is sufficient to invoke the crime exception. Requiring a strict *prima facie* case may not be possible at the discovery stage, and would result in an overzealous protection of the attorney-client privilege in a context where the rationale for that privilege may be inapplicable. This intermediate burden of proof has been approved in recognition of the significant proof problems facing a proponent of the exception. *See* Note, *The Future Crime or Tort Exception, supra*; Gardner, *The Crime or Fraud Exception, supra.*

■ Further, because of those proof problems, we follow *A. v. District Court* in holding that the trial court, in its discretion and without prior establishment of a foundation in fact that the crime or fraud exception applies, may order the production of relevant documents for an *in camera* inspection to determine whether that exception is applicable. *See Duplan Corp. v. Deering Milliken, Inc., supra,* 397 F.Supp. at 1195. In exercising that discretion the judge should require a showing of a factual basis adequate to support a good faith belief by a reasonable person that wrongful conduct sufficient to invoke the crime or fraud exception to the attorney-client privilege has occurred. *Cf.* C.R.C.P. 11 ("The signature of an attorney [on a pleading] constitutes a certificate by him that he has read the pleading; that to the best of his knowledge, information, and belief there is good ground to support it ... If a pleading ... is signed with intent to defeat the purpose of this Rule, it may be stricken ...").

Two additional issues which may arise in connection with further proceedings in this case are whether, in order for the crime or fraud exception to the attorney-client privilege to apply: (1) the attorney must be aware of the illegal use to which his advice

is being put and (2) the client must know or reasonably should know of the unlawfulness of his conduct. In accord with the prevailing view we answer the first question in the negative and the second in the affirmative.

■ Whether or not the attorney is aware of the wrongful purpose for which his advice is sought, the policy considerations for recognizing an exception to the attorney-client privilege are equally applicable. Thus, his knowledge or participation is not necessary to application of the exception, and this is the general rule. *E.g.,* 8 *Wigmore, Evidence, supra,* § 2298 at 573–77.

■ It is also generally accepted that the crime or fraud exception applies only when the client knows or reasonably should know that the advice is sought for a wrongful purpose. *E.g., State ex rel. North Pacific Lumber Co. v. Unis, supra; McCormick, Evidence, supra,* § 95 at 199 and n.48; Gardner, *The Crime or Fraud Exception, supra* at 710; *see also United Services Automobile Assn. v. Werley, supra* at 32 (advice must be sought for a knowingly unlawful end); 8 *Wigmore, Evidence, supra* § 2298 at 573–77 (advice must be sought for a knowingly unlawful end). The reason for this limitation on the scope of the exception has been expressed as follows:

> Good-faith consultations with attorneys by clients who are uncertain about the legal implications of a proposed course of action are entitled to the protection of the privilege, even if that action should later be held improper.

*State ex rel. North Pacific Lumber Co. v. Unis, supra,* 282 Or. at 464, 579 P.2d at 1295.

■ Consequently, the trial court should determine in the course of further proceedings whether the Caldwells have made a *prima facie* showing—one that gives their assertions a foundation in fact—that the crime or fraud exception is applicable. If this showing is made, then the documents relevant to their claim of civil fraud are discoverable. In determining whether this is a proper case for application of the excep-

tion, the court, if it deems it advisable, may order a production of the documents for *in camera* review. The court must also find that these communications were sought in furtherance of an end that the client knew or reasonably should have known to be improper, but it need not find that Hill was a participant in or aware of the alleged fraud.

Because we do not have the allegedly privileged documents before us, we do not resolve whether the Caldwells have made the necessary *prima facie* showing. We do note, however, that from the limited record available the Caldwells have sufficiently substantiated their allegations to merit careful review by the district court.

### IV.

■ In refusing to order discovery of the documents requested by the Caldwells, the trial court stated only that they were privileged. The source of that privilege was not specified. While Hertz and Weinschel have based their argument upon the attorney-client privilege, it is possible that the trial court relied in part upon the work product privilege. C.R.C.P. 26(b)(3). As we stated in *A. v. District Court, supra,* the work product and attorney-client privileges are related but distinct theories:

> Generally, the attorney-client privilege protects communications between the attorney and the client, and the promotion of such confidences is said to exist for the benefit of the client. On the other hand, the work-product exemption generally applies to "documents and tangible things . . . prepared in anticipation of litigation or for trial," C.R.C.P. 26(b)(3), and its goal is to insure the privacy of the attorney from opposing parties and counsel.

191 Colo. at 25, 550 P.2d at 327 (citations omitted).

Here, the Caldwells requested not only correspondence between Hill and Hertz or Weinschel, but also "memoranda, documents, notes or any other writing or item which in any way discusses or concerns any of the defendants' opinions, ideas, or comments . . . concerning the value of WERNER BAUMGART'S testimony, the value of WERNER BAUMGART as a witness, or the possibility of WERNER BAUMGART being found liable to the [Caldwells]." Some of these documents may qualify as the work product of attorney Hill.

However, the work product privilege is also subject to the crime or fraud exception. *Natta v. Zletz,* 418 F.2d 633 (7th Cir. 1969); *Hercules Inc. v. Exxon Corp.,* 434 F.Supp. 136, 155 (D.Del.1977). Just as the attorney-client privilege may not be abused as a shield for ongoing or future illegal activity, so the privilege created for an attorney's work product cannot be allowed to protect the perpetration of wrongful conduct. Upholding the assertion of these privileges in that context would be a perversion of their legitimate purpose and scope.

Our rule to show cause is made absolute, and the trial court is directed to conduct further proceedings in accordance with the views expressed in this opinion.

