ZELLA WAHNON AND ASSOCIATES, Plaintiff-Appellee, *v.* FRIEDA BASSMAN, d/b/a A-1 Nursing Home, Defendant-Appellant.

First District (4th Division)   No. 78-1620

Opinion filed December 20, 1979.

Robert T. Berger and Ross P. Benjamin, both of Chicago (Rosenthal and Schanfield, of counsel), for appellant.

Lupel & Armari, of Chicago (Warren Lupel, of counsel), for appellee.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

This action was brought by plaintiff, Zella Wahnon and Associates, to recover damages from defendant, Frieda Bassman, doing business as A-1 Nursing Home, for breach of a services contract. The trial court, without a jury, entered judgment in the amount of $900 in favor of plaintiff and against defendant. This appeal was taken from that judgment, and we affirm the trial court.

The issues presented for review are (1) whether the trial court was correct in entering judgment in favor of plaintiff, in view of the terms of the contract; (2) whether the trial court was correct in finding Frieda Bassman individually liable for the breach of contract; and (3) whether the trial court abused its discretion in striking defendant's jury demand.

On May 23, 1977, plaintiff, Zella Wahnon and Associates (Wahnon),

filed suit in the circuit court of Cook County, Illinois, against defendant, Frieda Bassman (Bassman), doing business as A-1 (A-1) Nursing Home. Wahnon alleged that prior to September 1976, she and Bassman entered into a written contract which stated that Wahnon was to provide occupational therapy consulting services to the nursing home. The contract set forth that Wahnon would make at least two visits to the home per month; each visit of 2½ or 3 hours was to be considered a "unit." Wahnon was to receive $75 per unit and submit a bill at the end of each month. A-1 was to pay Wahnon by the 20th of the following month "for services rendered and billed in the prior month." Further, the contract contained a provision which stated that termination could only be effected after 180 days' written notice by the terminating party to the other party. The agreement was signed Zella Wahnon and Associates, By "Zella Wahnon," and "Frieda Bassman."

Wahnon alleged in her complaint that on or about October 1, 1976, Bassman orally advised her of the termination of the contract, and that thereafter plaintiff forwarded to defendant a statement for 6 months of services subsequent to the termination date. Wahnon demanded payment for 180 days, in accordance with the contract, but Bassman failed to pay.

On June 23, 1977, Bassman filed her *pro se* appearance. The case was later set for trial, but prior to trial the court held Bassman in default. On August 1, 1977, Bassman filed a *pro se* motion to vacate the default. The court vacated the default and reset the case for trial to October 6, 1977. On that date, the court entered an *ex parte* judgment in favor of Wahnon and against Bassman in the amount of $900.

On November 7, 1977, Bassman, still appearing *pro se*, moved to vacate the *ex parte* judgment on the grounds that she was unable to get to the courtroom on October 6, 1977. She alleged that on such date she was traveling from out of town and arrived too late for the trial call. Her sworn motion indicated she attempted to have her son appear for her at the time of the trial call to explain her tardiness, but the trial court had already entered an *ex parte* judgment prior to her son's arrival. Bassman's motion to vacate the *ex parte* judgment and quash the theretofore pending garnishment proceedings was granted.

On November 16, 1977, Bassman filed her *pro se* answer to the complaint denying the essential allegations thereof, and further claiming that Wahnon breached the agreement by nonperformance. At that time she also demanded a trial by jury. On April 19, 1978, she moved for leave to file the appearance of an attorney. The motion was granted and her attorneys subsequently filed an appearance.

On May 1, 1978, Bassman, by and through her attorneys, moved for leave to withdraw her *pro se* answer and requested leave to file a motion

to dismiss the complaint. The court granted leave to file an amended answer, but did not grant the motion to file a motion to dismiss. Wahnon then moved to strike the jury demand of Bassman. Wahnon contended Bassman filed her *pro se* appearance without demanding a jury, thus waiving her rights to a jury. The court allowed Wahnon's motion and struck Bassman's jury demand.

On July 18, 1978, a trial was held and the trial court granted judgment in favor of plaintiff and against defendant in the sum of $900. Defendant appeals that judgment.

Defendant contends the trial court erred in entering judgment in favor of Wahnon and against Bassman, in view of the terms of the contract. Defendant alleges that plaintiff did not adduce any proof that showed she (plaintiff) had complied with her obligation and duties under the contract, and that the obligation of A-1 is dependent upon Wahnon's performance of the obligations under the contract. The contract stated, in pertinent part, that:

"1. Associates shall provide occupational therapy consulting services to Nursing Home through onsite visits to Nursing Home's location as aforesaid and shall make at least two visits to said location for said consulting purposes per month. Said visits shall consist of two and one-half to three hours at Nursing Home's location at which time Associates shall provide occupational therapy consulting services as described in the 'Job Description' a copy of which has heretofore been delivered to Nursing Home. Each such visit of two and one-half to three hours shall be considered a 'unit'.

2. Nursing Home shall pay Associates $75.00 per unit. Associates shall bill Nursing Home at the end of each month and Nursing Home shall pay Associates by the 20th of the following month for services rendered and billed in the prior month.

3. This contract shall continue until terminated by either party. Termination may occur for any cause, but only after 180 days written notice of termination by the terminating party to the other party sent by United States mail to the location for said party set forth above.

4. Associates reserves the right to send any registered occupational therapist of its choice to Nursing Home for the purpose of providing the occupational therapy consulting services called for under this contract.

5. Nursing Home shall not control the method by which Associates provides occupational therapy consulting services to Nursing Home, and Associates shall be considered an independent contractor and not an employee of Nursing Home.

ZELLA WAHNON & ASSOCIATES
By [s] Zella Wahnon OTU
Zella Wahnon

[s] Frieda Bassman"

Defendant and plaintiff both cite *Waldron v. Brazil & Chicago Coal Co.* (1880), 7 Ill. App. 542. In *Waldron*, the husband of the plaintiff agreed to use his influence for the advantage of the defendant and to perform such services for defendant as his health would permit. He was to receive $150 per month for a 1-year period. The trial court found that he used his influence during only 1 month and did not perform any services thereafter and, therefore, was entitled to 1 month's payment. Judgment was entered for 1 month's payment. Plaintiff had sued defendant for the months of July, August and September. Plaintiff appealed the trial court's judgment. The appellate court affirmed the trial court and stated that service on Waldron's part was a condition precedent to a right to recover, and since he had not performed that service he could not recover for more than 1 month's service.

Defendant contends since no services were performed by Wahnon during the 6-month period for which she seeks recovery, and the contract specifically provided that A-1 must only pay for services rendered, then Wahnon cannot recover under the contract.

We do not agree with defendant's analysis of the present fact situation. Defendant breached the contract when she verbally terminated it during a telephone conversation with plaintiff. As we noted previously, the contract specifically provided for termination by either party upon 180 days' written notice. In *Tatar v. Maxon Construction Co.* (1973), 54 Ill. 2d 64, 67, 294 N.E.2d 272, 273-74, the court stated:

> "The only guidance afforded is found in the accepted rule of interpretation which requires that the agreement be given a fair and reasonable interpretation based upon a consideration of all its language and provisions."

The intention of the parties is to be derived from the language of the contract, and when the terms of the written contract are certain and unambiguous the instrument itself is the sole determinant of the parties' intentions. *Illinois Valley Asphalt, Inc. v. La Salle National Bank* (1977), 54 Ill. App. 3d 317, 320, 369 N.E.2d 525, 528.

■ After reviewing the agreement, we believe the contract is clear regarding the termination clause and it was breached by defendant when she did not give the proper written notice to plaintiff. Although plaintiff was not permitted to perform after the verbal termination, she was

entitled to the damages the trial court awarded her for the 6-month period (180 days) required to terminate the contract.

■■ Defendant next contends she should not be held individually liable on the contract. Defendant states she is not personally obligated in any way under the contract because the contract was entered into with A-1 Nursing Home, Inc., and not defendant individually, and, additionally, the corporate nursing home is the beneficiary and obligor under the contract.

> " 'In determining whether it is the intention of the parties to bind the corporate principal or to bind the purported agent individually, all of the facts and circumstances surrounding the making of the contract are properly considered by the court.' " *M & J Diesel Locomotive Filter Corp. v. Nettleton* (1965), 56 Ill. App. 2d 146, 151, 205 N.E.2d 659, 662.

Defendant testified at the trial that she was an officer and sole shareholder of the nursing home. She also stated she engaged in many of the day-to-day operations of the nursing home at the time of the agreement. Plaintiff had negotiated with the defendant individually on three other occasions for similar employment contracts, and it appears from the facts and circumstances that defendant was acting individually and not as a corporate representative in this instance.

In the contract itself there is no mention of the corporate identity, but only the name, "A-1 Nursing Center." The contract is signed by defendant, "Frieda Bassman," without reference to a corporate name or other name which would infer she was not signing in her individual capacity. ■■ To ascertain the parties' intention, we must regard the practical construction the parties have given the contract. (*Murukas v. Murukas* (1968), 99 Ill. App. 2d 342, 347, 240 N.E.2d 797, 800.) We do not see any evidence that would allow us to hold the corporation as the obligor. It is apparent from the contract that in its practical construction defendant is personally liable.

■■ ■ As defendant's last contention, she alleges the trial court abused its discretion in striking her jury demand. Defendant filed her *pro se* appearance in the trial court on June 23, 1977. On November 16, 1977, she filed her *pro se* answer and requested a jury trial. In May 1978, plaintiff filed her motion to strike the jury demand based upon Supreme Court Rule 285, which states:

> "A small claim shall be tried by the court unless a jury demand is filed by the plaintiff at the time the action is commenced or by the defendant not later than the date he is required to appear." (Ill. Rev. Stat. 1977, ch. 110A, par. 285.)

Defendant cites Supreme Court Rule 183, which states:

"The court, for good cause shown on motion after notice to the opposite party, may extend the time for filing any pleading or the doing of any act which is required by the rules to be done within a limited period, either before or after the expiration of the time." Ill. Rev. Stat. 1977, ch. 110A, par. 183.

Defendant contends the record shows "good cause" and, therefore, she should have been allowed her jury demand. We do not agree. In the instant case, the request for a jury was filed more than 4 months after the filing of an appearance. Defendant appears to take the position that the burden is on plaintiff in this instance to show there will be no inconvenience to anyone in granting the motion. This is clearly not the case. The burden of demonstrating good cause rests with the party seeking relief. *Trapani v. Trapani* (1969), 109 Ill. App. 2d 202, 206-07, 248 N.E.2d 294, 297.

In *Johnson v. Sabben* (1972), 7 Ill. App. 3d 238, 241, 282 N.E.2d 476, 478, the court stated the test is not whether the appellate court sitting as a trial judge would have allowed the request for a jury trial, but whether the action of the trial court in denying the request was a reasonable exercise of sound discretion.

In our review of the record, we believe we would be justified in finding that the trial court did not abuse its discretion in not allowing defendant's late jury demand. Although the defendant filed her appearance and jury demand without the aid of legal counsel, we do not believe that was a sufficient showing of "good cause" to have granted her request. Throughout, the record discloses defendant to have been a sophisticated businesswoman, well able to take or have taken on her behalf, in a timely fashion, those legal steps that were necessary.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

ROMITI and LINN, JJ., concur.