THE BOARD OF EDUCATION OF COMMUNITY CONSOLIDATED SCHOOL DISTRICT NO. 54, Plaintiff-Appellee, *v.* DEL BIANCO AND ASSOCIATES, INC., Defendant-Appellant.

First District (2nd Division)    No. 76-571

Opinion filed January 17, 1978.

Garbutt, Jacobson and Lee, Associated, of Chicago (E. J. Garbutt, Jerome J. Jacobson, and William F. Ryan, of counsel), for appellant.

Edward C. Purcell, of Purcell & Wardrope, Chartered, of Chicago (Sidney Z. Karasik, of counsel), for appellee.

Mr. JUSTICE STAMOS delivered the opinion of the court:

This appeal arises from a judgment entered by the circuit court of Cook County, pursuant to a jury trial, in favor of plaintiff Board of Education of Community Consolidated School District No. 54 and against defendants Del Bianco and Associates, Inc. and Stahelin Construction Co., Inc. Plaintiff's action sounded in contract and the jury returned verdicts against defendants Del Bianco and Stahelin in the sums of $125,000 and $50,000 respectively. Defendant Del Bianco is the sole appellant.[1]

On March 1, 1963, plaintiff and defendant entered into a standard form of agreement between owner and architect pursuant to which defendant would perform the professional architectural services necessary to the construction of a junior high school in Schaumburg, Illinois. This agreement, subsequently to be analyzed in detail, specified, *inter alia*, the basic architectural services to be rendered by defendant. In return for the rendering of these services, defendant was to be paid six percent of the project construction cost and other sums for extra services performed (if, as stated in the agreement, performed due to unusual circumstances).

The junior high school was constructed and in 1965 plaintiff observed a deficiency in the walls of the school building. This deficiency was diagnosed as efflorescence, a condition of deterioration caused by moisture within the walls. The efflorescence was evidenced by salt deposits appearing on the exterior of the walls, causing a white discoloration.

The efflorescent condition of the building walls gradually worsened and in January of 1971 plaintiff filed suit against defendant for breach of contract and negligence. Count I of plaintiff's complaint alleged that defendant failed to perform its contractual obligations, resulting in various structural defects in need of redesign and reconstruction. The defects alleged were cracked mortar joints, efflorescence, cracked bricks, improperly sealed walls, presence of excess wetness in portions of the

---

[1] Hereinafter, all references to "defendant" shall connote Del Bianco and Associates, Inc.

premises, improperly separated steel joints and the installation of improper and defective building materials. Plaintiff alleged $50,000 in contract damages. Count II repeated the allegations of count I but contained a prayer for $50,000 in damages due to defendant's negligence.

Subsequent to the filing of plaintiff's action, a lengthy procedural chronology ensued. Defendant first responded to the complaint by filing an answer, denying the allegations contained in the complaint. On February 18, 1972, the case was dismissed for want of prosecution, said case coming to be heard on the no progress call. However, the cause was reinstated for status call on May 14, 1972, pursuant to the vacation of the February 18, 1972 order.

Defendant then filed a motion to dismiss count II (the negligence count) of plaintiff's complaint. Defendant's motion noted (1) that actions for damage to real property must be filed within five years after the action accrued (Ill. Rev. Stat. 1971, ch. 83, par. 16); (2) that the cause of action accrued and the limitations period commenced to run when the building was completed, citing *Simoniz Co. v. J. Emil Anderson & Sons, Inc.* (1967), 81 Ill. App. 2d 428, 225 N.E.2d 161, and (3) that plaintiff's action, alleging defendant's negligence, filed in 1971, was commenced more than five years after the construction of the building and was, therefore, barred. On March 1, 1974 the circuit court granted defendant's motion, dismissing count II with prejudice and continuing the cause as to all remaining issues and parties.

Trial of plaintiff's contract action commenced September 9, 1975. Immediately thereafter a series of amendments to the complaint were filed by plaintiff. On September 10, 1975 plaintiff filed an amended complaint in which plaintiff in count I prayed for $65,000 in damages plus costs and in count II sought to recover $150,000 in punitive damages due to defendant's alleged wilful misrepresentation. Plaintiff, on the same date, then filed an amendment to the amended complaint, pursuant to which plaintiff demanded judgment against defendant in the sum of $245,000. On September 18, 1975, a second amendment to the amended complaint was filed alleging (1) that defendant prepared an architectural design permitting certain walls to be constructed without proper waterproofing at the top thereof; (2) that defendant prepared specifications calling for mortar unfit for use in the Chicagoland geographical area; and, (3) that defendant designed unpitched rowlock windowsills which would not allow the shedding of water. Defendant answered this amendment on September 18, 1975.

The jury trial of plaintiff's contract action against defendant continued until September 19, 1975, at which time judgment was entered against defendant in the amount of $125,000. Defendant made a post-trial motion for vacation of the judgment and on January 7, 1976, this motion was

denied. It is from the judgment entered in favor of plaintiff and against defendant that defendant Del Bianco appeals.

Defendant initially contends that the circuit court improperly allowed plaintiff to prosecute his action on a breach of contract theory. Defendant notes that plaintiff's amended complaint states that defendant "failed to prepare architectural design documents in accordance with good architectural practices" and submits that such allegation characterizes an action founded upon negligence as opposed to contract principles. Plaintiff's original count II, sounding in negligence, had been stricken as not filed in a timely fashion. Accordingly, defendant argues that the trial court erred in refusing to direct a verdict in favor of defendant at the close of plaintiff's case based upon the applicable statute of limitations.

■■ ■ We find no merit in defendant's contention. Whenever an employment contract exists including duties to be performed in the course of employment which constitute the subject of the contract, a breach of a duty in the course of employment may authorize recovery in tort or in contract. (*Stanley v. Chastek* (1962), 34 Ill. App. 2d 220, 180 N.E.2d 512.) Furthermore, it is clear in Illinois that where both a tort and a contract cause of action arise out of the same fact situation, the plaintiff is free to proceed with the theory of *his* choice. (*Ledingham v. Blue Cross Plan* (1975), 29 Ill. App. 3d 339, 330 N.E.2d 540, *rev'd on other grounds* (1976), 64 Ill. 2d 338, 356 N.E.2d 75.) Consequently, while plaintiff's complaint contains "words of negligence" we are unable to conclude that the use of such terminology precluded plaintiff's action in contract.

During the trial, S. Guy Fishman, a registered architect in the State of Illinois, testified as an expert witness on behalf of plaintiff. Fishman indicated that he visited the site of the junior high school at the request of Marvin Lapicola, assistant superintendent of finance of Community Consolidated School District No. 54. Fishman, in order to determine the cause and extent of the deteriorated condition of the school walls, examined the construction, took photographs, and completed a written report. He testified that replacing the walls damaged by efflorescence would cost $125,000. Fishman's estimate, at trial, was based upon his inspection of the construction and a sheet of computations made one week prior to trial. The document containing the computations was not revealed by Fishman until cross-examination. Plaintiff's counsel was unaware of the computations. Defendant objected to such testimony as "surprise" and testimony from documents not produced. The trial court overruled defendant's objection. The jury subsequently returned a verdict against defendant in the amount of $125,000. Defendant submits that Fishman's testimony had a prejudicial effect on this verdict.

■■ While Fishman's testimony may have impressed the jury, we are

unable to hold that such testimony was improper or had prejudicial effect. Fishman, testifying as an expert, was able to base his opinion on personal observation (*Richards v. Village of Edinburg* (1968), 97 Ill. App. 2d 36, 239 N.E.2d 479) and conclusions drawn therefrom. His testimony was subject to cross-examination by defendant. Accordingly, the jury was entitled to believe or disbelieve such testimony, properly admitted into evidence by the trial court.

At the close of the evidence and during the course of the conference on jury instructions, defendant tendered and the trial court refused to accept the following instruction:

> "The duty of the architect depends upon the particular agreement he has entered with the person who employs him and in the absence of a special agreement he does not imply or guarantee a perfect plan for satisfactory result; rather he is only liable if he fails to exercise reasonable care and skill."

Defendant contends that the trial court's refusal of the proffered instruction caused the jury to be uninformed of the standard of skill and care which must be met by architects. Defendant suggests that in the absence of such instruction a fair verdict could not be reached.

■■ Defendant, apparently, continues to misapprehend the nature of plaintiff's action. Defendant is charged by plaintiff with breach of contract yet defendant insists that it was entitled to an instruction appropriately given in a negligence case. In fact, defendant's proposed instruction was extracted from a negligence case. (*Mississippi Meadows, Inc. v. Hodson* (1973), 13 Ill. App. 3d 24, 299 N.E.2d 359.) The trial court properly refused the instruction and presented instructions to the jury on a theory of breach of contract.

We will now consider the testimony adduced at trial in conjunction with numerous exhibits to determine whether, as defendant contends, the verdict rendered by the jury was against the manifest weight of the evidence. A court of review can set aside a verdict as being against the manifest weight of the evidence only when it is obvious or clearly evident that the jurors have arrived at an incorrect result. *O'Reilly v. Fencel* (1976), 38 Ill. App. 3d 499, 348 N.E.2d 251.

■■ ■ Applying the aforementioned standard, we must determine whether the manifest weight of the evidence supported the finding that defendant had breached its contract with plaintiff. The agreement entered into by plaintiff and defendant was the standard form of agreement between owner and architect, devised by The American Institute of Architects. Pursuant to this agreement, defendant promised to perform, *inter alia*, the following duties:

> "1. *Schematic Design Phase*

b). * * * prepare schematic design studies leading to a recommended solution together with a general description of the Project for approval by the Owner.

2. *Design Development Phase*

a). * * * prepare from the approved schematic design studies, the design development documents consisting of plans, elevations and other drawings, and outline specifications, to fix and illustrate the size and character of the entire Project in its essentials as to kinds of materials, type of structure, mechanical and electrical systems and such other work as may be required.

3. *Construction Documents Phase*

a). * * * prepare from the approved design development documents, working drawings and specifications setting forth in detail and prescribing the work to be done, and the materials, workmanship, finishes and equipment required for the architectural, structural, mechanical, electrical, service-connected equipment, and site work, * * *.

4. *Construction Phase-General Administration of Construction Contracts*

c). * * * will keep the Owner informed of the progress of the work, will endeavor to guard the Owner against defects and deficiencies in the work of Contractors, * * *."

These expressed duties are not the only obligations which defendant was required to perform. Not all of the duties growing out of a contract must have been expressly stipulated for: many duties arise *ex lege* out of the relation created by the contract. (*Stanley v. Chastek* (1962), 34 Ill. App. 2d 220, 180 N.E.2d 512.) Consequently, we find that defendant had the implied obligation to specify the use of reasonably good materials, to perform its work in a reasonably workmanlike manner, and in such a way as reasonably to satisfy such requirements as it had notice the work was required to meet. See *Stanley v. Chastek*.

It is undisputed that subsequent to the construction of the junior high school its walls suffered from a deficiency known as efflorescence. This efflorescent condition continuously worsened to a point at which major reconstruction was necessary to cure the condition. Furthermore, it is equally evident that the composition of the mortar, specified by defendant, contributed to the efflorescent condition.

After the efflorescence had become apparent, various tests were performed on the efflorescent brick to determine the cause of this condition. An efflorescence test by Soil Testing Services, Inc., noted that the efflorescence resulted from a combination of, but not necessarily all, the following factors: (1) freezing and thawing cycles; (2) frozen masonry mortar at the time of construction; and (3) excessive lime in the mixture of

mortar. Efflorescence testing conducted by Walter H. Flood & Co. revealed that efflorescence existed in the bricks with mortar attached but that no efflorescence appeared in the brick without mortar. Richard Donatoni, a certified architect in the State of Illinois, and an employee of defendant, testified that Soil Testing Services, Inc., retained to analyze the masonry mortar used in the construction of the school, reported that the mortar used was inappropriate for regions subject to extreme freezing and thawing. This conclusion was based upon suggestions made by the Structural Clay Products Institute. The report of Soil Testing Services, Inc., concluded, in relevant part, with the following statements:

> "2. It is our opinion that the deterioration of the mortar is associated primarily with the high lime content. The design mix corresponds to Type O of ASTM C 270-68. The Structural Clay Products Institute has suggested (Technical Notes, Vol. 7 No. 11, November 1956) that Type O mortar not be used where exposures are severe (where freezing and thawing in presence of excessive moisture occurs). At the minimum Type N mortar should have been used, according to the above reference.
>
> 3. It is our opinion that the efflorescence observed was probably due to the low resistance to weathering of the mortar coupled with the high magnesium hydroxide content of the hydrated lime. Magnesium (from the hydrate after carbonation) is more soluble in water than calcium carbonate. Under the influence of rain water, with its $CO_2$ content, the solubility of both materials is increased and leaching occurs. Subsequent drying leaves $CaCO_3$ and, probably, basic magnesium carbonate, e.g. $4MgCO_3.Mg(OH)_2.4H_2O$. The instability of the mortar face destroys the partial protective action of the associated Portland Cement, thus allowing leaching to continue."

Bernard Erlin, president of Erlin, Hime Associates, a consulting firm engaged in the investigation and analysis of construction materials, also testified that the mortar used in the construction of the school was not of the type used for exterior walls in the Chicagoland area.

■■ The aforementioned reports and testimony relating to the mortar specified by defendant for use in the construction of the school indicate that defendant failed to specify the use of reasonably good materials. Defendant had notice of the weather conditions characteristic of the geographical region in which the school was to be built and failed to specify, for use, a mortar consistent with such conditions. As a consequence, plaintiff suffered substantial damage necessitating the reconstruction of portions of the school. The $125,000 verdict against defendant, in view of the grievous breach of contract committed by defendant, was not excessive and represents the damages arising naturally from the breach itself and which reasonably may be supposed to have

been within the contemplation of the parties at the time the contract was made. *Illinois Structural Steel Corp. v. Pathman Construction Co.* (1974), 23 Ill. App. 3d 1, 318 N.E.2d 232.

Based upon the foregoing analysis of the facts of this case and the legal principles applicable thereto, the verdict rendered by the jury cannot be deemed against the manifest weight of the evidence. The judgment of the circuit court of Cook County, in favor of plaintiff and against defendant, is affirmed.

Affirmed.

DOWNING, P. J., and PUSATERI, J., concur.