DELTAK, INC., Plaintiff-Appellee, *v.* STEVEN M. SCHWARTZ, Defendant-Appellant.

First District (4th Division)   No. 82—1947

Opinion filed October 27, 1983.

Fisch, Lansky and Greenburg, of Chicago, for appellant.

Defrees & Fiske, of Chicago (Timothy J. Riordan and Gary Schuman, of counsel), for appellee.

JUSTICE LINN delivered the opinion of the court:

An original complaint for preliminary injunction was brought by plaintiff-appellee Deltak, Inc. (Deltak), against defendant-appellant Steven M. Schwartz (Schwartz). Prior to its stipulated dismissal, Schwartz filed suit in the circuit court of Cook County against Deltak seeking damages for Deltak's alleged breach of his written employment contract. Deltak filed a motion for summary judgment on Schwartz' contract claim, and it was granted.

Schwartz appeals, contending that a material issue of fact was raised thereby preventing the entry of summary judgment. More particularly, Schwartz contends the following material factual issues were presented to the trial court: (1) he was not made aware of the quality standards governing his work, although failure to comply with these standards was the basis for the termination of his employment; (2) he was not given the required 30 days' notice prior to termination of his failure to comply with quality standards; and (3) he was terminated improperly at the "whim" of his employer.

We affirm the decision of the trial court.

Deltak, Inc., is a corporation that develops and produces multi-media training courses for the electronic data processing industry. Some of these courses are written by independent authors, who are employed by Deltak to design and write materials in connection with particular projects.

On July 5, 1979, Deltak and Schwartz entered into a written contract providing that Schwartz, as an independent author, would design and write two to five multi-media training courses. The contract

provided, in pertinent part,

"3B. All deliverables [writer's work product] must conform to DELTAK's product development standards and procedures ***, which have been furnished to WRITER prior to the signing of this Agreement. All deliverables must also conform to DELTAK's quality standards, as interpreted by DELTAK's Vice President of Product Development, who must approve the quality and content of all deliverables before work on the next phase begins."

The contract also provided that Schwartz' fee was to be a royalty of 8% of Deltak's gross receipts from the sale of the courses. At the time he signed the contract, Schwartz received a copy of Deltak's Standards and Procedures Manual.

Schwartz submitted the first design for his project in November 1979. Deltak's vice president of product development determined that Schwartz' work failed to conform to Deltak's quality standards. He requested Schwartz make substantial revisions. The revised product design, submitted in February 1980, also was rejected as being of inferior quality. On April 7, 1980, Deltak wrote Schwartz a six-page letter explaining in detail the problems its reviewers had found in the content, organization, and writing of the revised design. At the end of six pages of criticism, the letter concluded, "We are making good progress."

In June 1980, Deltak's vice president of product development conferred with members of Deltak's committee assigned to oversee Schwartz' work; he determined that Schwartz' work product had failed to meet the specified quality standards for the project. He instructed the product manager to terminate Schwartz' employment contract. Thereupon, Schwartz was terminated and another author was hired to produce the program. The second author never saw any of Schwartz' work product. Schwartz' breach of contract action and subsequently this appeal followed.

■ Schwartz' first contention on appeal is that he raised a material fact issue to the effect that Deltak failed to furnish him with its product development standards. Schwartz' failure to conform to these standards allegedly was the basis for termination. It was against these standards that the quality of Schwartz' work was to be judged, and, if they were not made known to him, he could not be guilty of having breached his obligation to meet the standards. However, an examination of the trial court record reveals evidentiary facts which directly controvert Schwartz' first contention. If the party moving for summary judgment supplies evidentiary facts which, if not contra-

dicted, would entitle him to judgment, the opposing party cannot rely upon his complaint alone to raise issues of material fact. (*Burks Drywall, Inc. v. Washington Bank & Trust Co.* (1982), 110 Ill. App. 3d 569, 575, 442 N.E.2d 648, 653.) An affidavit in support of a motion for summary judgment, as was presented in this case, is actually a substitute for testimony taken in open court. (*Fooden v. Board of Governors* (1971), 48 Ill. 2d 580, 587, 272 N.E.2d 497, 499, *cert. denied* (1972), 408 U.S. 943, 33 L. Ed. 2d 766, 92 S. Ct. 2847.) Well-alleged facts contained therein, uncontradicted by counteraffidavit must be taken as true, notwithstanding contrary averments in the adverse party's pleading which purport to establish bona fide issues of fact. 48 Ill. 2d 580, 587, 272 N.E.2d 497, 500-01, *cert. denied* (1972), 408 U.S. 943, 33 L. Ed. 2d 766, 92 S. Ct. 2847.

The record discloses that Schwartz himself filed an affidavit explicitly stating that he had received Deltak's "Product Development Standards and Procedures Manual" at the time he signed the employment contract. A second affidavit was filed by Serge P. Beauregard, group vice president of development and operations at Deltak, affirming that Schwartz was given the procedures manual when he accepted his first assignment. The record is devoid of any contradictory evidence or counteraffidavits which place this material fact at issue. Accordingly, we find that Schwartz literally received Deltak's product development standards and was thereby apprised of the quality standards to which his work was to conform and to which his work allegedly did not conform. No material issue of fact remained to be decided in connection with the foregoing.

Schwartz' second and third contentions on appeal both address the issue of the propriety of his termination. Schwartz argues that certain conditions precedent to the termination of the employment contract were not met. Deltak denies Schwartz' contention. Schwartz contends that his agreement with Deltak required 30-days' prior written notice as a condition precedent to termination. The provision at issue, paragraph 7D(3), provides:

"7D. *Contingencies for WRITER's Non-Performance*; If WRITER fails to meet any schedule deadlines, fails to comply with DELTAK's product development or quality standards, or fails to cooperate in setting any schedule for deliverables or revisions before the deadline, DELTAK may:

* * *

(3) Terminate this Agreement in the event WRITER fails to comply with the product development and quality standards as defined in paragraph 3B, provided WRITER shall have 30 days

from receipt of written notice of such failure to comply with the applicable standards."

In support of his contention that Deltak breached this provision of the contract, Schwartz cites *Zella Wahnon & Associates v. Bassman* (1979), 79 Ill. App. 3d 719, 398 N.E.2d 968. In *Zella,* plaintiff entered into an employment contract that provided she would receive monthly compensation for billable hours submitted at the end of each month. Termination could be effected by either party at will upon 180 days' written notice. The employer orally terminated the contract without the required 180 days' prior written notice. The court found the employer to be in breach and awarded plaintiff the lost wages she would have earned during the 180-day notice period required by the agreement.

The factual disparity between *Zella* and the instant case renders it inapposite. Unlike the plaintiff in *Zella,* Schwartz was not to be compensated on a periodic basis. The agreement did not provide for wages. His contract specified that any compensation was to consist solely of a predetermined royalty based on the gross receipts Deltak realized from the sale of Schwartz' completed courses. Because Schwartz' courses were never used or sold, Deltak realized no gross receipts, and, consequently, Schwartz was entitled to no compensation. Thus, whereas the plaintiff in *Zella* would have earned a specific sum during the required notice period, under the provisions of Schwartz' contract with Deltak the additional 30 days' notice would have entitled him to no compensation whatsoever.

More crucial than Schwartz' misplaced reliance on *Zella* is the undisputed evidence which suggests that Deltak did in fact comply with the spirit of the notice requirement. The contract provision at issue, paragraph 7D(3) quoted above, required that the program writer be given 30 days from receipt of written notice of failure to comply with applicable quality standards. The record shows that Schwartz submitted his first design in November 1979. After reviewing his work, Deltak informed him that his design did not conform to quality standards and requested that he make substantial revisions. In February 1980, Schwartz presented a revised product design to Deltak's reviewing committee. This too was rejected as not in conformance with Deltak's quality standards.

■ A letter from Deltak to Schwartz dated April 7, 1980, over 90 days prior to his ultimate termination on July 16, 1980, set forth in great detail criticism of Schwartz' submitted design. The letter called for Schwartz to "revise and resubmit the entire design," informed him that "the most serious problem is the overall organization," and

concluded that "the design shows evidence of poor writing." In addition, Deltak informed Schwartz that several of the techniques recommended in his design were either "violations of standards or old techniques that were no longer used" and that "in at least one case the outlines failed to show any content corresponding to an objective." Even to one unversed in the design of multimedia training courses, these comments would suffice as notice of failure to comply with quality standards. In July 1980, after Schwartz had been given several opportunities and almost a full year to bring his work into conformance with Deltak's quality standards and had failed to do so, Deltak terminated the employment contract. Based on the trial court record, ample undisputed evidence was presented to support the finding that Schwartz was in receipt of written notice of failure to conform with applicable quality standards more than 30 days prior to his termination.

Schwartz' final contention is that he was terminated improperly at the "whim" of his employer. He argues that Deltak acted under the mistaken impression that the contract was terminable at will and violated the fixed "term" provision in the agreement. In support of this argument, Schwartz quotes paragraph 3B, as set forth in the factual statement above, and paragraph 2 which provides:

"2. *TERM*: This Agreement shall take effect as of the date hereof and shall continue for three years."

Schwartz' assertions, while accurate, are immaterial to the instant contract which, as clearly characterized in paragraph 3B, is in the nature of a personal service contract.

"Contracts wherein the promisor's performance is conditioned upon its satisfaction with the promisee's performance have traditionally been divided into two groups, depending upon whether the nature of the promisor's satisfaction is objective or subjective. In contracts involving matters of fancy, taste, sensibility and judgment, the nature of the promisor's satisfaction is subjective. Hence, '[i]n contracts involving matters of fancy, taste, or judgment, when one party agrees to perform to the satisfaction of the other, he renders the other party the sole judge of his satisfaction without regard to the justice or reasonableness of his decision, and a court or jury cannot say that such party should have been satisfied when he asserts that he is not.' *** Accordingly, the personal service contract *** must be construed as allowing termination of the promisee's employment upon the subjective dissatisfaction of the defendant promisor with the plaintiff's performance." *Ray v.*

*Georgetown Life Insurance Co.* (1981), 94 Ill. App. 3d 863, 865, 419 N.E.2d 721, 722.

■■ Paragraph 3B of Schwartz' employment contract requires that Schwartz' services conform to Deltak's quality standards as subjectively interpreted by the vice president of product development. The contract must be construed as allowing termination of Schwartz' employment upon the subjective dissatisfaction of Deltak. Thus, the contract is not, as Schwartz contends, an "at will" agreement but rather a personal service contract terminable upon Deltak's subjective determination that Schwartz' work product does not conform to quality standards. A review of the trial record reveals that Deltak repeatedly and finally rejected Schwartz' work product as not conforming to quality standards and that his termination was based upon Deltak's dissatisfaction. We therefore find no merit in Schwartz' contention that he was terminated at the "whim" of Deltak in contravention of his agreement.

■ A breach of a personal service contract will not be found unless the employee shows that the employer was not dissatisfied with him or that the employer discharged him for reasons other than dissatisfaction. (*Ray v. Georgetown Life Insurance Co.* (1981), 94 Ill. App. 3d 863, 866, 419 N.E.2d 721, 723.) Nothing in the record has been offered by Schwartz to prove that Deltak was not dissatisfied with his work product or that Deltak terminated him for any reason other than this subjective dissatisfaction. No genuine issue of material fact has been raised that refutes this conclusion.

The purpose of summary judgment is to render expeditious judgment on questions of law after the trial court has determined that no genuine issue as to any material fact exists between the parties. (*Kusiciel v. LaSalle National Bank* (1982), 106 Ill. App. 3d 333, 338, 435 N.E.2d 1217, 1221.) The record discloses that the trial court had before it and considered all of the documents submitted to it by the parties in support of and in opposition to Deltak's motion for summary judgment. Where there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law, summary judgment is proper. (*Finance America Commercial Corp. v. Econo Coach, Inc.* (1981), 95 Ill. App. 3d 185, 187, 419 N.E.2d 935, 938.) The trial court determined such to be the case and granted Deltak's motion for summary judgment. We affirm.

Affirmed.

ROMITI, P.J., and JOHNSON, J., concur.