COMPETITIVE FOOD SYSTEMS, INC., Plaintiff-Appellant, v. JULES LASER *et al.*, Indiv. and as partners in Laser, Schostok, Kolman & Frank, *et al.*, Defendants and Third–Party Plaintiffs-Appellees (Silvertrust, Chulock & Stewart, *et al.*, Third-Party Defendants).

Second District   No. 2—87—0203

Opinion filed April 21, 1988.—Supplemental opinion on denial of rehearing June 30, 1988.

Michael R. Panter & Associates, of Chicago (Michael R. Panter and Richard L. Hirsh, of counsel), for appellant.

Lynn D. Dowd, Peter A. Monahan, and Thomas P. McGarry, all of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (George W. Spellmire, Jr., of counsel), for appellees.

PRESIDING JUSTICE LINDBERG delivered the opinion of the court:

Plaintiff, Competitive Food Systems, Inc. (Competitive), has appealed an order of the circuit court of Lake County granting defendants' motion for summary judgment on plaintiff's complaint alleging legal malpractice and breach of contract. The only issue raised on appeal is whether the trial court properly granted defendants' motion for summary judgment. Although the record consists of several thousand pages, a brief factual background will suffice for an understanding of the issue on appeal.

Competitive is in the business of running a chain of small stores in shopping malls which sell nuts, fruits and other confectionaries. Competitive is owned and managed by Barbara and John Lofquist. Defendants are attorneys and had been general counsel to plaintiff for over one year when defendants helped negotiate an agreement with Rodman and Renshaw (underwriters) for the underwriting of a $1,500,000 private offering in which the underwriters guaranteed to purchase all

unsold units of the offering. The underwriting agreement required Competitive to furnish certain data and to produce an offering circular by September 15, 1981. This offering circular was to be used by the underwriters in their solicitation of investors. The underwriting agreement also required the offering circular to comply with all applicable laws of the Securities and Exchange Commission. Defendants agreed to do the legal work required to produce the offering circular specified in plaintiff's agreement with the underwriters. Defendants were to receive a flat fee of $25,000 to be paid out of the proceeds of the underwriting. An offering circular as required by the underwriter's agreement was not produced by September 15, 1981. Sometime between September 15 and November 14, 1981, the underwriters withdrew their guarantee to purchase unsold shares. All parties continued to work on the offering. An offering circular was produced on November 14, 1981, and was used to solicit investors.

The offering failed and transactions terminated. Plaintiffs filed suit against defendants for legal malpractice and for breach of contract due to defendants' failure to produce the offering circular by September 15, 1981. Several years of discovery, depositions and pleadings took place until defendants filed the motion for summary judgment which is the subject of this appeal. Defendants' motion for summary judgment was filed 10 days before trial and ruled upon by the trial court the morning of trial.

Defendants' motion for summary judgment consisted of an, as yet, unraised affirmative defense to plaintiff's complaint alleging legal malpractice and breach of contract. Defendants' affirmative defense alleged that the financial projections that would be required to be part of the offering circular were "unreasonable" and "materially false." Defendants argued that these projections were prepared by John Lofquist, Competitive's owner. The projections would be material misstatements and misleading and, therefore, a violation of Rule 10b–5 of the Securities and Exchange Commission (SEC) (17 C.F.R. §240.10b–5 (1979)). Therefore, any offering circular produced by defendants on or before September 15, 1981, containing plaintiff's projections would have been illegal as a matter of law. Defendants contend that they are not liable, as a matter of law, for failing to help plaintiff commit an illegal act. Defendants also argued in their motion for summary judgment: (1) that plaintiffs could not establish the "but for" element of proximate cause required for liability under the theory of legal malpractice; and (2) that the unresolved status of a required trademark and disputed noncompetition clause prevented defendants from performing their obligations, and, therefore, as a matter of law, defend-

ants could not be liable to plaintiff. The trial court found genuine issues of material fact as to these arguments, and they are not at issue on this appeal, in spite of extensive argument addressed to these issues on appeal by the parties.

The trial court found no genuine issue of material fact as to the financial projections and granted defendants' motion for summary judgment, concluding as a matter of law that defendants could not be held liable for failing to produce the offering circular by September 15, 1981. The trial court's order stated in relevant part:

> "Though there is a possibility that an extremely liberal interpretation of the pleadings could show that there may be a genuine issue of material fact with respect to: [1] the 'but for' test with respect to legal malpractice (*supra*) or [2] the status of the trademark and the non-compete clause; Defendants have firmly established that there is no genuine issue of material fact with respect to the financial projections (*supra*). The Court is of the opinion, viewing *Midwest Bank* and other cases, that the status of the financial projections precludes any liability on the part of the Defendants."

■■ ■ Initially, we note that the affirmative defense raised by defendants was a proper subject upon which the trial court could rule in a motion for summary judgment. An affirmative defense may be raised in a motion for summary judgment even though not raised in the pleadings. (*Midwest Bank & Trust Co. v. Village of Lakewood* (1983), 113 Ill. App. 3d 962, 447 N.E.2d 1358.) Although there may exist an issue of fact, the trial court, when viewing the evidence in the light most favorable to the nonmoving party, may grant summary judgment where it concludes that, as a matter of law, no liability exists. (113 Ill. App. 3d 962, 447 N.E.2d 1358.) On review of the trial court's granting of summary judgment, we must determine whether (1) the trial court was correct in finding no genuine issue of material fact existed and (2) that entry of summary judgment was correct as a matter of law. (*Bauer v. City of Chicago* (1985), 137 Ill. App. 3d 228, 484 N.E.2d 422.) Summary judgment is a drastic measure, to be granted only where the evidence, construed most strongly against the moving party, establishes clearly and without doubt the right thereto. *Becovic v. Harris Trust & Savings Bank* (1984), 128 Ill. App. 3d 107, 469 N.E.2d 1379.

■■ First, we address the law concerning defendants' affirmative defense. It is based on the well-established rule that the court will not aid a fraud-feasor, who invokes the court's jurisdiction, to profit from his own fraud by recovering damages. This rule is based on the rationale that the courts will refuse to aid anyone who seeks to base his cause

of action upon an illegal or immoral act or transaction. (*Mettes v. Quinn* (1980), 89 Ill. App. 3d 77, 411 N.E.2d 549.) In *Mettes*, the appellate court affirmed the dismissal of the plaintiff's complaint where the plaintiff sought to recover damages for the allegedly faulty advice given by her attorney which allowed the plaintiff's fraud to be uncovered. This rule and, thus, defendants' affirmative defense is applicable to count I alleging legal malpractice and count II alleging breach of contract. (*Tovar v. Paxton Community Memorial Hospital* (1975), 29 Ill. App. 3d 218, 330 N.E.2d 247 (the rule that plaintiff will not be permitted to profit by his own wrong by recovering damages applies to a complaint alleging the same acts amounted to breach of contract and tort).) It is clear that in order for defendants' affirmative defense to succeed, plaintiff must have sought to commit a fraud or other illegal act. An illegal or fraudulent act on the part of plaintiff is essential to defendants' affirmative defense and, therefore, is a material issue. *Guyton v. Roundy* (1985), 132 Ill. App. 3d 573, 477 N.E.2d 1266 (to defeat summary judgment, a disputed issue must be material to the essential elements of either the cause of action or defenses to the cause of action).

■ Since the essential element of an illegal or fraudulent act by plaintiff is based on the alleged illegality of the financial projections, the illegality of the financial projections is a material issue upon which defendants' motion for summary judgment is dependent. The purpose of summary judgment is to render judgment on questions of law after first determining that no genuine issue of material fact exists between the parties. (*Deltak, Inc. v. Schwartz* (1983), 119 Ill. App. 3d 119, 456 N.E.2d 187.) Therefore, we must address the second and third issues of whether the trial court was correct in finding no genuine issue of material fact that the financial projections were illegal as a matter of law under the securities law.

■■ Our review of the record leads us to the conclusion that the trial court erred when it found no genuine issue of material fact concerning defendants' allegations that the financial projections contained material misstatements which made the projections misleading and illegal under Rule 10b—5. Material misstatements are ones which contain untrue statements of material fact or omissions of material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading. (*Eisenberg v. Gagnon* (3d Cir. 1985), 766 F.2d 770; 17 C.F.R. §240.10b—5, par. (b) (1979).) The trial court, in its order granting defendants' motion, relied solely on the deposition of plaintiff's expert to support its findings concerning the financial projections. Plaintiff's expert, Yale Kramer, gave

deposition testimony which indicated the financial projections concerning income were inconsistent and, therefore, unreliable. He stated in relevant part:

"Q. [Counsel for defendants]: Now in doing your analysis and you come across a disparity or a discrepancy such as that, would you consider that to be a material problem in the offering circular?

A. [Yale Kramer]: Well, I guess the first question is why did I do projections, and the reason was because I didn't feel I could rely upon these projections.

Q. Why couldn't you rely on those projections?

A. Because there were inconsistencies in there that I felt made the projections unreliable.

Q. Now your projections are, in your opinion, accurate?

A. Well, my projections are much more reasonable, in my opinion.

Q. Are those projections in the offering circular unreasonable?

A. Well, those projections are unreliable, and to the extent that they're not reliable, I guess they're unreasonable.

Q. Then you don't believe that they truly reflect what actually would have happened in that company?

A. That's why I prepared new projections."

Yale Kramer also discussed what he believed were "errors" or "inconsistencies" in the assumptions made about costs and other factors used to develop the financial projections. The following exchange then occurred:

"Q. What about the statement above that, 'Stores will break even for the first six months of operation and attain a projected operating income level thereafter.' Was that statement true?" [Referring to projections made by plaintiff.]

A. I tested that. That's what I was doing with some of this July 31st stuff. *And I felt that this was a realistic projection.* In fact, I thought that probably it was conservative in that I thought they could make a profit.

Understand what I mean by profits now. That the cost minus the expenses before any management allocation, et cetera, would, in fact, show a profit." (Emphasis added.)

A review of Yale Kramer's deposition does not support the trial court's finding that there was no issue of material fact as to whether the financial projections contained material misstatements.

The deposition testimony of defendants also raises inferences that

these projections did not contain material misstatements which made them misleading. One of the defendants testified at his deposition that the offering circular produced on November 14, 1981, which contained the same financial projections at issue, complied with all applicable securities law. In addition, the accountants and the underwriters, as well as defendants, who claimed to be experienced in SEC matters, relied on these very projections throughout their dealings and in soliciting investors, without ever indicating that the projections contained material misstatements which made them misleading. Defendants' deposition and the reliance by all the parties involved, construed in the light most favorable to the nonmoving party, leads to an inference that the financial projections did not contain material misstatements. We conclude the trial court erred in finding that no genuine issue of material fact existed as to whether or not the financial projections contained material misstatements which made the financial projections misleading. Therefore, we must reverse and remand for further proceedings. *Bauer v. City of Chicago* (1985), 137 Ill. App. 3d 228, 484 N.E.2d 422.

■ Although we conclude that the trial court committed reversible error in finding no genuine issue of material fact, the last issue concerning the proper application of SEC Rule 10b—5 is likely to arise again at trial. We, therefore, address this issue. Section 10b, which applies to both buyers and sellers, makes it "unlawful for any person *** [t]o use or employ, in connection with the purchase or sale of any security ***, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." (15 U.S.C. §78j(b) (1982).) Pursuant to its rulemaking power under this section, the SEC promulgated Rule 10b—5, which now provides:

> "It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>
> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) *To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or*
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security." (Emphasis added.) 17 C.F.R. §240.10b—5 (1979).

■■ The financial projections at issue are regulated by paragraph (b) of Rule 10b—5. (*Eisenberg v. Gagnon* (3d Cir. 1985), 766 F.2d 770.) Financial projections concerning the future performance of plaintiff's operations were material statements in that there was a substantial likelihood that a reasonable investor would have considered the statements important in a decision of whether or not to invest in the offering. (*TSC Industries, Inc. v. Northway, Inc.* (1976), 426 U.S. 438, 48 L. Ed. 2d 757, 96 S. Ct. 2126.) Plaintiff's expert, Yale Kramer, in his deposition, stated that the financial projections would be material to the decision to invest. Plaintiff does not dispute this conclusion. We conclude that the trial court was correct in ruling that the financial projections are material statements within the meaning of SEC Rule 10b—5. 426 U.S. 438, 48 L. Ed. 2d 757, 96 S. Ct. 2126.

■■ ■ For the following analysis, we assume that the trial court did not err but was correct in finding that the financial projections contained material misstatements which made them misleading. The trial court, in order to have properly granted summary judgment, would have had to rule as a matter of law that any material misstatements in the financial projections were made with the requisite *scienter* for a violation of Rule 10b—5. (*Ernst & Ernst v. Hochfelder* (1976), 425 U.S. 185, 47 L. Ed. 2d 668, 96 S. Ct. 1375 (*scienter* is a necessary element to Rule 10b—5 liability, and no liability can be imposed for negligent conduct alone).) Under a section 10b cause of action, a plaintiff must prove that the party made a material misstatement with actual knowledge of its falsity or in reckless disregard of the truth. (*In re Warner Communications Securities Litigation* (S.D.N.Y. 1985), 618 F. Supp. 735, (plaintiff must prove (1) materiality and (2) that defendants withheld such material information either with actual intent to deceive, manipulate or defraud, or defendant recklessly disregarded the facts and their consequences).) An opinion or projection issued without a genuine belief or reasonable basis is an untrue statement which if made knowingly or recklessly is culpable conduct under Rule 10b—5. *Eisenberg v. Gagnon* (3d Cir. 1985), 766 F.2d 770.

■■ ■ It is clear that findings of errors in the financial projections are not sufficient as a matter of law to support the granting of summary judgment. A finding of the requisite *scienter* is also needed before material misstatements in financial projections violate Rule 10b—5. (*Ernst & Ernst v. Hochfelder* (1976), 425 U.S. 185, 47 L. Ed. 2d 668, 96 S. Ct. 1375; *Eisenberg v. Gagnon* (3d Cir. 1985), 766 F.2d 770 (materially misleading financial projections, to be actionable, must be made knowingly or in reckless disregard of the truth).) Defendants, in their brief, fail to directly address the issue of *scienter* and state that

an "untrue" statement is sufficient for a Rule 10b—5 violation. As indicated herein, the case law, including authority cited by defendants, clearly establishes that more than an untrue or inaccurate projection is required before the financial projections at issue could be a violation of Rule 10b—5. (17 C.F.R. §240.10b—5 (1979).) Assuming the financial projections contained material misstatements and were, therefore, misleading, the trial court erred in that the record in the instant case does not support a finding, as a matter of law, of whether or not the plaintiff had the requisite *scienter* for a Rule 10b—5 violation. If the financial projections are later found to contain material misstatements which are misleading, this fact could admit to several different conclusions which may or may not meet the requisite *scienter* for a Rule 10b—5 violation. (See *In re Warner Communications Securities Litigation* (S.D.N.Y. 1985), 618 F. Supp 735.) The illegality of the financial projections would depend upon which conclusions were drawn by the fact finder from the evidence presented at trial. Where facts admit to more than one conclusion, including a conclusion unfavorable to movant, such facts cannot support summary judgment. *Harris v. Bethlehem Steel Corp.* (1984), 124 Ill. App. 3d 449, 464 N.E.2d 634.

Defendants' motion to vacate the November 10, 1987, order of this court allowing plaintiff to file a corrected reply brief is denied.

We reverse the circuit court of Lake County and remand for further proceedings.

*Reversed and remanded.*

DUNN and WOODWARD, JJ., concur.

### SUPPLEMENTAL OPINION ON DENIAL OF REHEARING

PRESIDING JUSTICE LINDBERG delivered the opinion of the court:

Defendants appropriately ask us to address an argument, which they raised in their brief, for affirming the trial court's grant of summary judgment of the breach of contract count. Defendants contend that the trial court's grant of summary judgment in their favor on plaintiff's breach of contract claim should be affirmed because, as a matter of law, an attorney may only be sued for a breach of duty owing to a client under legal malpractice and not contract. We do not agree.

The authority cited by defendants does not stand for their contention. Defendants' authority concerns the characterization of the underlying facts of an attorney's breach of a duty owed to a client for

purposes of interpreting the application of the statute of limitations or assignability of a legal malpractice claim. See *Brainard v. Brown* (1983), 91 A.D.2d 287, 458 N.Y.S.2d 735 (statute of limitations governing legal malpractice applies where gravamen of suit is attorney's negligence, drawing a distinction between unspecific oral retainers and detailed contracts which outline specific duties); *Christison v. Jones* (1980), 83 Ill. App. 3d 334, 405 N.E.2d 8 (due to personal and confidential nature of attorney-client relationship, legal malpractice claim is nonassignable and not part of bankrupt's estate under Federal bankruptcy law); *Yates v. Muir* (1985), 130 Ill. App. 3d 604, 474 N.E.2d 934, *rev'd on other grounds* (1986), 112 Ill. 2d 205, 492 N.E.2d 1267.

Defendants concede that plaintiff has stated all the elements for a breach of contract claim. In the instant case, plaintiffs alleged a separate agreement entered over a year after initially retaining defendants as legal counsel for defendants to do the legal work involved in the offering circular. Defendants were to be paid a flat fee of $25,000 for the legal work required for the offering circular. Plaintiff is not limited, as a matter of law under these facts, to sue only under a legal malpractice theory, but may also sue under a breach of contract theory. *Allen v. Komajda* (1970), 130 Ill. App. 2d 1018, 266 N.E.2d 456 (basis of action in medical malpractice is tort rather than contract, but where breach of express promise by physician is alleged then action may be in contract); *Board of Education v. Del Bianco & Associates, Inc.* (1978), 57 Ill. App. 3d 302, 372 N.E.2d 953 (where contract of employment exists including duties to be performed in the course of employment which constitute subject of the contract, breach of a duty in the course of employment may authorize recovery in tort or in contract); *Cundiff v. Unsicker* (1983), 118 Ill. App. 3d 268, 454 N.E.2d 1089 (where tort and contract action arise from same facts, the plaintiff is free to proceed with either theory); *Brainard v. Brown* (1983), 91 A.D.2d 287, 458 N.Y.S.2d 735.

Therefore, we reject defendants' argument that the trial court's grant of summary judgment on the breach of contract count should be affirmed. We find no merit in defendants' other arguments on petition for rehearing.

Petition by defendants for rehearing denied.

DUNN and WOODWARD, JJ., concur.