RADIAC ABRASIVES, INC., Plaintiff-Appellant, v. DIAMOND TECH-NOLOGY, INC., a/k/a Standard Diamond Products Company, *et al.*, Defendants-Appellees.

Second District   No. 2—88—0424

Opinion filed December 16, 1988.

LINDBERG, P.J., specially concurring.

Francis D. Morrissey, Patrick J. Herald, and Donald J. Hayden, all of Baker & McKenzie, of Chicago (William Lynch Schaller, of counsel), for appellant.

Goldsmith, Thelin, Schiller & Dickson, of Aurora (Bruce A. Brown, of counsel), for appellees.

JUSTICE INGLIS delivered the opinion of the court:

This is an interlocutory appeal brought pursuant to Supreme Court Rule 307 (107 Ill. 2d R. 307) for refusal to grant a preliminary injunction. Plaintiff's action was based on breach of fiduciary duty, conspiracy, conversion, and interference with contractual relations. Plaintiff's motion for preliminary injunction requested an order barring Javier Munoz from serving in any capacity as an employee or agent of defendants. It is notable that Javier Munoz has not been made a party to this action.

Plaintiff contends that the trial court erred in denying its petition for a preliminary injunction and additionally contends that the trial court erred in barring it from compelling defendants and their trial counsel to testify regarding communications between defendants and their counsel. We affirm.

Defendant Peter C. Mertens is president of defendant Diamond Technology. Mertens had previously worked for plaintiff as the general manager of plaintiff's Aurora plant from October 1985 until his resignation on March 15, 1988. As general manager, Mertens was the highest ranking official of plaintiff's Aurora plant.

Defendant Wesley W. Lindquist was an employee of plaintiff at plaintiff's Aurora plant until his resignation on March 15, 1988.

Defendant Bernard F. Brady also worked for plaintiff at plaintiff's Aurora plant, where he served as chief salesman until his resignation on March 15, 1988.

Neither Mertens, Lindquist, nor Brady was a director or officer of Radiac.

Starting in late October or early November of 1987, Mertens, Lindquist, and Brady began discussing with one another their mutual dissatisfaction with plaintiff. These discussions included the possibility of forming a competing company.

On or about December 18, 1987, Lindquist with the approval of Mertens sold certain used Radiac equipment and machinery to Robert Richmond Machinery Company. Defendants later repurchased five or six pieces of this machinery from Richmond for use at their company. This occurred prior to their resignations from Radiac. At no time did defendants advise any of their supervisors at Radiac of their repurchase of the machinery for their company.

Brady testified that defendants made no definite decision with respect to forming a competing company until they sought advise of

counsel as to the legal ramifications of their proposed course of conduct. Defendants met with attorney Calvin Thelin at his law office prior to December 29, 1987. On December 29, 1987, Thelin filed Diamond Technology's articles of incorporation with the Illinois Secretary of State. All defendants concede that Diamond Technology is a competitor of Radiac.

The articles of incorporation revealed that Thelin served as incorporator of Diamond Technology and as its registered agent. All defendants are presently being defended by attorney Bruce Brown, a member of Thelin's law firm.

Before resigning from Radiac on March 15, 1988, defendants leased a building on January 15, 1988; began negotiations in December 1987 and obtained financing from a local bank in February 1988 in the amount of $30,000 to $40,000 term loan; made a $1,000 deposit in February 1988 for a computer-assisted lathe; began test marketing for their new company consisting of pricing flyers and telephone calls; began manufacturing diamond grinding wheel products; sold some of those products to Radiac customers; and spent some of their time at Radiac making or engraving products for sales by and for the benefit of Diamond Technology.

On March 8, 1988, Mertens awarded Javier Munoz a $500 bonus. Marge Zuspann, an employee of Radiac, testified that Mertens had advised her that February 1988 had been a record month and ordered Zuspann to draw a $500 bonus check payable to Javier Munoz during the next pay period. Zuspann testified that in her nine years as controller of the Aurora plant, no bonuses had been paid prior to the close of Radiac's fiscal year on March 31. Zuspann also stated that at no other time had an hourly employee been singled out for a special bonus. Nevertheless, Zuspann obeyed Mertens' order and issued a directive that Javier Munoz' bonus be included in his next paycheck.

Howard Roquet, president of Radiac, testified that he accepted the resignations of Mertens, Lindquist, and Brady on March 15, 1988. Defendants had met a few days before this meeting and had reached an agreement to tender their resignations simultaneously.

In speaking with Zuspann on March 15, 1988, Roquet learned for the first time about the Javier Munoz bonus. Roquet immediately countermanded the bonus award and advised Javier Munoz of his decision later that day. Roquet testified that Mertens was not authorized to make the bonus offer. Munoz testified that he was upset over Roquet's decision. Munoz never received the $500 bonus. Mertens stated that the reason he had given the $500 bonus was because Munoz was more productive in manufacturing superabrasive wheels than other

Radiac employees. Evidence showed that Munoz was not using the same type of molds as other employees and a direct comparison between the productivity of Munoz and other Radiac employees was therefore difficult.

Mertens admitted that he knew that he was under investigation on or about the time he authorized Munoz' bonus.

On April 18, 1988, Javier Munoz announced that he was resigning from Radiac on Friday, April 22, 1988, to join Diamond Technology as an employee. On April 22, 1988, the trial court entered a temporary restraining order barring Munoz from serving as an agent or employee of defendants pending further court order.

On April 28 and 29, 1988, the trial court held a hearing on Radiac's preliminary injunction motion. At the conclusion of Radiac's case in chief, the trial court ruled that plaintiff had failed to establish a clearly ascertained right and likewise failed to demonstrate that there was not an adequate remedy at law. Accordingly, the trial court denied plaintiff's petition for a preliminary injunction.

■ We note that we have taken with the case a motion by plaintiff to strike portions of defendants' brief. We deny the motion. However, in doing so, we note that we will disregard defendants' statement of facts where it is argumentative.

■ We affirm on the ground that plaintiff did not name Javier Munoz as a party. It is axiomatic that all persons who are legally or beneficially interested in the subject matter of a suit and who will be affected by a decree of the trial court must be joined in the litigation (*People ex rel. Carson v. Mateyka* (1978), 57 Ill. App. 3d 991, 995), and that under fundamental principles of due process, a court is without jurisdiction to enter a decree, order, or judgment which affects a right or interest of someone not before the court (*Lain v. John Hancock Mutual Life Insurance Co.* (1979), 79 Ill. App. 3d 264, 269).

■ In the instant case, plaintiff's motion for preliminary injunction prayed that the trial court "issue a preliminary injunction order barring Munoz from serving in any capacity as an employee or agent of defendants until further order of this court." It is self-evident that an order in accordance with plaintiff's prayer for relief would have affected Munoz. Therefore, Munoz was a necessary party, and no preliminary injunction could have been entered which barred his employment without making him a party.

Even if Munoz had been named as a party and the petition for the injunction had sought to enjoin defendants from hiring Munoz, we would affirm the decision of the trial court on the ground that plaintiff failed to establish a clearly ascertainable right.

■ In order to obtain a preliminary injunction, a plaintiff must show (1) a certain and clearly ascertainable right in need of protection; (2) a likelihood of success on the merits; (3) irreparable harm in the event an injunction is not issued; and (4) no adequate remedy at law. (*Shodeen v. Chicago Title & Trust Co.* (1987), 162 Ill. App. 3d 667, 672.) The granting or denial of a preliminary injunction is within the sound discretion of the trial court and will not be overturned absent an abuse of discretion. 162 Ill. App. 3d at 673.

Radiac argues that it has a clearly ascertainable right in need of protection in that it has a right to be free from unfair competition. In response, defendants appear to agree with this general proposition but contend that Radiac had no right to be free from defendants' hiring away an at-will employee.

■ ■ After terminating employment, it is not actionable to attempt to enter into employment contracts with former employer's employees where such employees are employees at will. (See *TAD, Inc. v. Siebert* (1978), 63 Ill. App. 3d 1001, 1006.) At the same time, if a defendant decides to go into business for himself and, while still employed by the plaintiff, contracts to employ the plaintiff's employees, he is in breach of his duties to the plaintiff. See Restatement (Second) of Agency §393, comment *e*, illustration, at 218 (1958); see also *Unichem Corp. v. Gurtler* (1986), 148 Ill. App. 3d 284, 290-91 (breach of officer's fiduciary duty to encourage an employee to leave corporation and join a rival business in which officer was going to join in near future). In the instant case, defendants actually hired Munoz after they had resigned from Radiac. Consequently, a preliminary injunction barring defendants from hiring Munoz would have been improper.

■ We also find that the trial court did not err in determining that there was an adequate remedy at law. For a legal remedy to be adequate, the remedy must be clear, complete and as practical and efficient as the equitable remedy. (*City of Chicago v. Festival Theatre Corp.* (1982), 91 Ill. 2d 295, 314.) An injunction is only proper where monetary damages cannot adequately compensate a plaintiff for his injury or where monetary damages cannot be measured with reasonable certainty. *Kanter & Eisenberg v. Madison Associates* (1986), 144 Ill. App. 3d 588, 592.

■ Plaintiff argues that there are not adequate damages because defendants' use of Munoz will result in increased productivity for defendants which will in turn result in increased goodwill for defendants. Plaintiff further contends that every day that Munoz works for defendant, plaintiff will suffer from wrongful competition.

It appears that in some sense damages would be difficult to calcu-

late; for example, the effect of Munoz on the business of both Radiac and Diamond Technology. Nonetheless, an at-will laborer appears to be fungible. Consequently, plaintiff could readily replace Munoz. While there may be some initial training and start-up costs in hiring a new employee, these costs should be capable of being computed. We therefore hold that the trial court did not err in finding that there was an adequate remedy at law.

Because we affirm on the two grounds mentioned, we do not consider plaintiff's remaining arguments as to the other grounds required to obtain a preliminary injunction.

Plaintiff contends that the trial court erred in barring it from compelling defendants and their trial counsel to testify as to certain communications between them. Plaintiff contends attorney-client privilege does not apply because of the crime-fraud exception. While this issue is not necessary to our present disposition, we elect to address it as it is an issue likely to recur at trial. See *Competitive Food Service, Inc. v. Laser* (1988), 170 Ill. App. 3d 606, 613.

■■ The attorney-client privilege exists in order that a client may consult freely with counsel without fear of compelled disclosure of information communicated by him to the attorney whom he has employed or seeks to employ. (*People v. Adam* (1972), 51 Ill. 2d 46, 48.) However, no privilege attaches to communications in which the client seeks legal assistance to obtain illegal ends. (*People v. Wurbs* (1976), 38 Ill. App. 3d 360, 364; *Lanum v. Patterson* (1909), 151 Ill. App. 36, 38-39.) The privilege does not attach where communications are in furtherance of a crime or fraud. (*Wurbs*, 38 Ill. App. 3d at 364; *Lanum*, 151 Ill. App. at 38-39; see also *Clark v. United States* (1933), 289 U.S. 1, 15, 77 L. Ed. 993, 1000, 53 S. Ct. 465, 469.) The reasoning for the exception has been set forth as follows:

" 'Since the policy of the privilege is that of promoting the administration of justice, it would be a perversion of the privilege to extend it to the client who seeks advice to aid him in carrying out an illegal or fraudulent scheme. Advice given for those purposes would not be professional service but participation in a conspiracy.' " *Wurbs*, 38 Ill. App. 3d at 364, quoting McCormick, Evidence §95, at 199 (2d ed. 1972).

In *Lanum*, the court quoted with acceptance *Coveney v. Tannahill* (N.Y. 1841), 1 Hill 33, 41:

" 'Now if the plaintiff consulted counsel before hand as to the means, the expediency, or the consequences of committing such a fraud, his communications may, perhaps, be privileged; and they are clearly so, as to what he may have said to counsel

since the wrong was done. But the attorney may, I think, be required to disclose whatever act was done in his presence towards the perpetration of the fraud. One who is charged with having done an injury to another, either in his person, his fame, or his property, may freely communicate with his counsel, without danger of having his confidence betrayed through any legal agency. But when he is not disclosing what has already happened, but is actually engaged in committing the wrong, he can have no privileged witness.' " *Lanum,* 151 Ill. App. at 39.

While the forgoing passages indicate that the attorney must give advice in furtherance of the illegal act or fraudulent scheme in order to vitiate the privilege, other authorities indicate that the focus should be on the intent of the client who is seeking information. (See *Clark,* 289 U.S. at 15, 77 L. Ed. at 1000, 53 S. Ct. at 470 (the loss of privilege does not depend on the showing of conspiracy; the attorney may be innocent of any wrongdoing).) We are of the opinion that the focus must be on the intent of the client. For example, if a client seeks advice on how to commit an illegal or fraudulent act, and the attorney refuses to give advice as to the means of carrying out such an act, we believe that the attorney-client privilege should not apply. Thus, as stated by the supreme court of Oregon:

"[I]n order to invoke the exception to the privilege, the proponent of the evidence must show that the client, when consulting the attorney, knew or should have known that the intended conduct was unlawful. Good-faith consultations with attorneys by clients who are uncertain about the legal implications of a proposed course of action are entitled to the protection of the privilege, even if that action should later be held improper." *State ex rel. North Pacific Lumber Co. v. Unis* (1978), 282 Or. 457, 464, 579 P.2d 1291, 1295.

The question has also been presented as to when an *in camera* inspection may be made. Plaintiff contends that a mere assertion that the communications are not privileged is sufficient to require the trial court to consider the issue. Defendants, on the other hand, contend that a party claiming the exception to the privilege must produce *prima facie* evidence of fraudulent conduct. No Illinois case has been found which addresses this issue.

In *Clark,* the Supreme Court stated:

" 'It is obvious that it would be absurd to say that the privilege could be got rid of merely by making a charge of fraud.' [Citation.] To drive the privilege away, there must be 'something to give color to the charge;' there must be 'prima facie evidence

that it has some foundation in fact.' [Citation.] When that evidence is supplied, the seal of secrecy is broken." (*Clark*, 289 . U.S. at 15, 77 L. Ed. at 1000, 53 S. Ct. at 469.)

In a more recent case, the supreme court of Colorado stated:

"A *prima facie* showing is not required *before* the judge can order a document produced for his *in camera* inspection to determine whether the privilege applies. The judge may order a document or documents produced when the privilege is first contested by the other party. However, there must be a *prima facie* showing that the *exception* applies to each document before the document is actually stripped of its privilege and admitted into evidence. Of course, the burden is upon the party asserting the exception." (Emphasis in original.) *A v. District Court* (1976), 191 Colo. 10, 24, 550 P.2d 315, 326.

We believe this statement to be the appropriate course. The communications themselves may be the evidence required to show a *prima facie* case. Therefore, an *in camera* inspection of the communications is the proper balance between protecting the privilege and finding the truth. At the same time, a request for an *in camera* inspection should not be used as a fishing expedition. Thus, the party seeking to assert the exception should specify what it expects the trial court to find and in some way demonstrate that there is a likelihood that the communications to be inspected will evidence an intent on the part of the client to commit a future illegal or fraudulent act.

Under the foregoing principles, plaintiff was required to specify what it expected the communications to reveal and demonstrate that there was a likelihood that the communications between defendants and their counsel evidence an intent to commit a fraudulent act. The trial court would then be required to hold an *in camera* inspection of the communications. If after reviewing the communications, the trial court found that there was a *prima facie* showing that the exception applied, the privilege would be broken, and the communications could then be entered into evidence.

Plaintiff argues that the exception applies because seeking information with regard to setting up a competing corporation was in furtherance of a breach of a fiduciary duty. This, however, assumes that defendants could take no preliminary actions in setting up a corporation prior to the time that they resigned from Radiac. Defendants, however, contend that actions which are merely preparatory are not in breach of any duty that they owed to plaintiff. In support of their contention, defendants have cited a line of cases from the Appellate Court for the First District. These cases have held that an employee,

absent a restrictive covenant, has a right to enter into competition with the former employer upon leaving such employ and that an employee may even go so far as to form a rival corporation and outfit it for business while still employed by the prospective competitor. (*Voss Engineering, Inc. v. Voss Industries, Inc.* (1985), 134 Ill. App. 3d 632, 635-36; *Lawter International, Inc. v. Carroll* (1983), 116 Ill. App. 3d 717, 734; *James C. Wilborn & Sons, Inc. v. Heniff* (1968), 95 Ill. App. 2d 155, 163.) An employee is held accountable for breaching his fiduciary duty to his employer only when he goes beyond such preliminary competitive activities and commences business as a rival concern while still employed. *Lawter International, Inc.*, 116 Ill. App. 3d at 734. See also *Voss Engineering, Inc.*, 134 Ill. App. 3d at 635-36.

Plaintiff contends that the cases cited by defendants should be rejected by this court. Specifically, plaintiff contends that the cases are in opposition to our supreme court's decisions in *Vendo Co. v. Stoner* (1974), 58 Ill. 2d 289, and *Mullaney, Wells & Co. v. Savage* (1980), 78 Ill. 2d 534. *Vendo* is a case which deals with the breach of fiduciary duties of officers and directors of a corporation. (See *Vendo*, 58 Ill. 2d at 293, 303-05.) Defendants in the present case were neither officers nor directors, and *Vendo* is therefore distinguishable. *Mullaney*, on the other hand, is a case in which defendant was neither an officer nor a director of the plaintiff corporation. (*Mullaney*, 78 Ill. 2d at 546.) Nevertheless, the defendant in *Mullaney* was found to owe a fiduciary duty to the corporation because there was an agency relationship. (78 Ill. 2d at 546.) In *Mullaney*, it was stated that an agent must act solely for the principal in all matters related to the agency and to refrain from competing with the principal. (78 Ill. 2d at 546.) The court therein relies in part on section 393 of the Restatement (Second) of Agency. See 78 Ill. 2d at 546-47.

Section 393 of the Restatement (Second) of Agency in turn provides that "[u]nless otherwise agreed, an agent is subject to a duty not to compete with the principal concerning the subject matter of his agency." (Restatement (Second) of Agency §393 (1958).) Comment *e* to section 393 states that after the termination of his agency, in the absence of a restrictive agreement, the agent can properly compete with his principal as to matters for which he has been employed and further provides that even before the termination of the agency, an agent is entitled to make arrangements to compete. (Restatement (Second) of Agency §393, comment *e*, at 218 (1958).) Thus, before the end of his employment, an agent can properly purchase a rival business and upon termination of employment immediately compete. The Restatement does, however, provide that an agent is not entitled to

solicit customers for such rival business before the end of his employment, nor can he properly do other similar acts in direct competition with the employer's business. Restatement (Second) of Agency §393, comment *e*, at 218 (1958).

The record reveals that, in the instant case, plaintiff sought to discover communications relating to preliminary steps in setting up a competing business. As discussed above, the taking of preliminary steps was not in breach of any fiduciary duty owed to plaintiff. Therefore, any communications between defendants and their counsel regarding preliminary activities are not subject to the crime-fraud exception. We note that certain activities which plaintiff has alleged defendants undertook, such as the selling of equipment to a third party with the intent to repurchase it later, may be in breach of a fiduciary duty owed to plaintiff. Therefore, to the extent that there were communications between defendants and their counsel related to the selling and buying of plaintiff's equipment, such communications may be subject to the crime-fraud exception.

In accordance with our forgoing analysis the decision of the trial court is affirmed.

Affirmed.

WOODWARD, J., concurs.

PRESIDING JUSTICE LINDBERG, specially concurring:

I concur in the majority holding on the basis that Mr. Munoz was a necessary party. I decline to concur in the balance of the opinion relating to the substantive issues argued by the parties because it is *dictum*.

I specially concur in the reasoning and holding of the majority on the basis of the necessary-party rationale.